72 U.S. 663 (____)
5 Wall. 663
THOMPSON
v.
RIGGS.
Supreme Court of United States.

*669 Messrs. Bradley and Wilson, for the plaintiff in error.
Messrs. Carlisle & W.S. Cox, contra, for the bankers, defendants in error.
*672 *673 Mr. Justice CLIFFORD delivered the opinion of the court.
Substance of the declaration was that the defendants were bankers, exercising the trade and business of banking, and that the plaintiffs were their customers, and as such were in the habit of making their deposits at their bank, and that the defendants, as such bankers, were accustomed to receive as deposits gold and silver coin, and other money currency, of their customers, to be paid and returned in kind, agreeably to the custom of their bank and all other banks in the city of Washington; and that the plaintiffs, on the twenty-eighth day of February, 1864, having a balance due them at *674 the bank of the defendants, of five thousand seven hundred and sixty-one dollars, as deposits previously made there in gold and silver coin, demanded payment and return of the same, and that the defendants then and there refused to make such payment and return as they had promised to do.
Defendants pleaded the general issue, and that they, at a certain time prior to the suit, tendered and offered to pay to the plaintiffs the sum of money in their declaration mentioned in treasury notes, made a legal tender in payment of debts, and that from that time they have been and still are ready to pay the same, and now bring the same into court.
1. Parties went to trial at a special term of the court and the verdict and judgment were for the defendants. Objection was duly taken by the plaintiffs to one of the rulings of the court in excluding certain testimony offered by them to show the usage and mode of dealing of other banks, and the bill of exceptions to the ruling was regularly drawn out and duly signed and sealed.
Prayers for instructions to the jury were duly presented by the plaintiffs and they were refused by the court, and other and different instructions were given in their place, but no bill of exceptions in that behalf was tendered by the plaintiffs, or signed or sealed by the court.
Statement in the minutes is that the plaintiffs excepted in law as well to the refusal of the court to instruct the jury as requested, as to the instructions given, and that the exceptions and the evidence are hereby made record. Plaintiffs also made a motion for new trial, assigning two causes: (1.) Because the court refused to instruct the jury as prayed by the plaintiffs. (2.) Because the court instructed the jury as prayed by the defendants.
Order of the court was that the motion should be heard before the court at general term. Both parties were heard before the full bench, and the court affirmed the judgment as rendered at the special term. Writ of error to this court was sued out by the plaintiffs.
2. Principal questions discussed at the bar are presented, if at al, in the prayers for instructions which were refused, *675 and in the instructions which were given to the jury. Defendants contend that neither the prayers for instructions nor the instructions given are before the court, as they are not exhibited in any bill of exceptions signed and sealed by the justice who presided at the trial.
Settled practice in this court is that neither the rulings of the court in admitting or rejecting evidence, or in giving or refusing instructions can be brought here for revision in any other mode than by a regular bill of exceptions. Final judgments in a Circuit Court may be re-examined in this court and reversed or affirmed upon a writ of error, founded upon an agreed statement of facts, a special verdict, a demurrer to a material pleading, or a demurrer to evidence, as well as by a bill of exceptions; but none of the other modes will enable the appellate court to revise the rulings of the court in refusing to instruct the jury as requested, or the instructions as given, or the rulings of the court in admitting or rejecting evidence. Such rulings rest in parol and can only be incorporated into the record by a bill of exceptions, and of course cannot be re-examined in any other way.[*]
None of the other modes suggested, say the court, in the case of Pomeroy's Lessee v. Bank of Indiana,[] enable the complaining party to review or re-examine the rulings of the court, except that of the bill of exceptions, and we reaffirm that rule.[]
Instructions requested or given rest in parol and do not, in the practice of this court, or in any other court where the common law prevails, become a part of the record, unless made so by a regular bill of exceptions, sealed by the judge who presided at the trial; and it is the well-settled practice in this court that an entry of the ruling in the minutes cannot be of any benefit to the party unless he seasonably reduces *676 the same to form and causes it to be sealed by the judge.[*]
Views of the plaintiffs are that the bill of exceptions is not necessary in cases removed here from the Supreme Court of this District. Reference is made to the eighth section of the act to organize the courts in this District, as furnishing support to the proposition, but it is quite evident that the section referred to relates exclusively to the practice in the subordinate court, and not to the proceedings for the removal of the cause into this court for examination and revision.
Exceptions taken in the trial at the special term, before a single justice, as there provided, may be reduced to writing at the time, or may be entered in the minutes of the justice and settled afterwards in such manner as the rules of the court provide. Such exceptions must be "stated in writing in a case or bill of exceptions, with so much of the evidence as may be material to the questions to be raised; but the case or bill of exceptions need not be signed or sealed."[]
Motion for new trial may also be entertained by the justice who tries the cause, at the same term, in the manner therein described. When such motion, however, is made upon the minutes, an appeal to the general term may be taken from the decision, in which case a bill of exceptions or case shall be settled in the usual manner. Our only purpose in referring to that section is to show that no part of it has anything to do with the question before the court.
No one of the clauses mentioned make any provision whatever for a writ of error or appeal to this court. Regulations upon that subject are made by the eleventh section of the same act, which provides that any final judgment, order, or decree of the court may be re-examined, and reversed or affirmed, in the Supreme Court of the United States upon writ of error or appeal in the same cases and in like manner as is now provided by law in reference to the final judgments, orders, or decrees of the Circuit Court of the United *677 States for this District. Writs of error and appeals were required to be prosecuted under that law, in the same manner, and under the same regulations as in the case of writs of error or appeals from judgments and decrees rendered in the Circuit Court of the United States.[*]
Conclusion is, that the regulations respecting the removal of cases from the Supreme Court of this District, on writs of error or appeal, are the same as from the Circuit Courts of the United States, and, of course, the questions presented in the prayers for instruction, and in the instructions given to the jury in this case, are not before the court, as neither the prayers for instruction, nor the instructions given, are any part of the record.
3. Remaining question arises under the exception to the ruling of the court, in excluding the testimony offered by the plaintiffs to show the usage and mode of dealing of other bankers in this city. The teller of the defendants, called by the plaintiffs, testified that the defendants, prior to the suspension of specie payments in April, 1861, paid all checks drawn upon the bank by their customers in gold, or its equivalent, except when the deposit had been made in depreciated paper; that after that time they uniformly made a difference with their customers in receiving and paying their deposits, between coin, or specie, and paper money, and that in all cases where the deposit had been made in coin, if requested, they paid the checks in coin; that after the suspension of the banks the defendants refused to receive currency as the equivalent of specie; that currency continued to be received and credited to customers as before, but went into the general funds of the bank, and the same money was never returned to the customer, and it was not received on special deposit; that the plaintiffs had never made any special deposits with the defendants; that the books of the bank, and the pass-books were kept as before the suspension, except that the different deposits were designated as coin, cash, checks, or treasury notes.
4. Testimony of the teller of the bank is express to the *678 point that the plaintiffs never made any special deposit with the defendants, and there is no testimony in the case to support any such theory. On the contrary, it is clear that they made their deposits for their own convenience, and were credited for the amount in the usual way on the books of the bank.
Clear inference from the whole testimony is that the deposits of the defendants were made without condition or special agreement of any kind, and in such cases the law is well settled that the depositor parts with the title to his money, and loans it to the bank.[*]
Deposits may be made under circumstances where the legal conclusion would be that the title to the thing deposited remained with the depositor, and in that case the bank would become the bailee of the depositor, and the latter might rightfully demand the identical money deposited as his property.
Contracts between a banker and his customers are doubtless required to be performed, and must be construed in the same way as contracts between other parties. When the banker specially agrees to pay in bullion or in coin he must do so or answer in damages for its value, and so if one agrees to pay in depreciated paper, the tender of that paper is a good tender, and in default of payment the promissee can recover only its market and not its nominal value.[]
But where the deposit is general, and there is no special agreement proved, the title of the money deposited, whatever it may be, passes to the bank, and the transaction is unaffected by the character of the money in which the deposit was made, and the bank becomes liable for the amount as a debt, which can only be discharged by such money as is by law a legal tender.[]
Moneys deposited with the bank in this case were entered in a pass-book in figures, expressing the amount in dollars *679 and cents, and it appears that the character of the money deposited is marked against each sum as coin, cash, check, or treasury notes, as the fact was in each particular instance. Such marks, however, are wholly insufficient to overcome the testimony of the teller, who was introduced by the plaintiffs, and who was the only witness examined upon the subject. Proof that those words were written against the several deposits for any such purpose as is supposed by the plaintiffs is entirely wanting; and in the absence of such proof it is much more reasonable to infer that they were put there as matter of convenience to the depositor, or to assist the memory as to the amount of the respective credits, in case of misrecollection or dispute.
No evidence of general usage or custom, in the ordinary sense of those terms, was offered by the plaintiffs or appears in the record. Customary rights and incidents universally attaching to the subject-matter of the contract in the place where it was made are impliedly annexed to the language and terms of the contract, unless the custom is particularly and expressly excluded. But evidence of usage is not admitted to contradict or vary express stipulations restricting or enlarging the exercise and enjoyment of the customary right. Omissions may be supplied, in some cases, by the introduction of such proof, but it cannot prevail over or nullify the express provisions and stipulations of the contract. So where there is no contract usage will not make one, as it can only be admitted either to interpret the meaning of the language employed by the parties in the absence of express stipulations, or where the meaning is equivocal or obscure.[*]
Judge Story expressed himself strongly against local usages or customs in particular trades or kinds of business, set up to controvert or annul the general liabilities of parties under the common law as well as under the commercial law, and remarked that there was great danger in admitting evidence of such loose and inconclusive usages and customs often unknown *680 to parties, and always liable to great misunderstanding and misinterpretations, and allow it to outweigh the well-known and well-settled principles of law.[*]
Usage contrary to law, or inconsistent with the contract, is never admitted to control the general rules of law or the real intent and meaning of the parties.[]
Evidence of local usage to sell commercial paper, pledged as a security for a loan, at private sale after demand of payment, and notice that such sale would be made in case of default, was held to be inadmissible in the Court of Appeals in the State of New York, all the judges concurring.[]
Evidence of the usage of banks to regard drafts drawn upon them, payable at a day certain, as checks, and not entitled to days of grace, is inadmissible as evidence to control the rules of law in relation to such paper.[§]
General rule of law is, that if a merchant deposits money with a bank, the title to the money passes to the bank, and the latter becomes the debtor of the merchant to that amount; and it is not perceived that the evidence offered, if it had been admitted, could have had any other effect than to control that general rule of law, as it is not pretended that the evidence showed a special deposit or any special contract. Viewed in any light consistent with the other evidence in the record, the testimony was either entirely immaterial or inadmissible, as tending to control the well-settled rules of law.
JUDGMENT AFFIRMED, WITH COSTS.
NOTES
[*] Suydam v. Williamson, 20 Howard, 432.
[] 1 Wallace, 602.
[] Bulkeley v. Butler, 2 Barnewall & Cresswell, 434; Seward v. Jackson, 8 Cowen, 406; 2 Tidd's Practice, 896; 4 Chitty's General Practice, 7; 2 Institutes, 427; Dougherty v. Campbell, 1 Blackford, 24; Cole v. Driskell Id. 16; Strother v. Hutchinson, 4 Bingham, N.C. 89.
[*] Pomeroy's Lessee v. Bank of Indiana, 1 Wallace, 598.
[] 12 Stat. at Large, 764.
[*] 2 Stat. at Large, 106; United States v. Hooe et al., 1 Cranch, 318.
[*] Marine Bank v. Fulton Bank, 2 Wallace, 256.
[] Robinson v. Noble, 8 Peters, 198; McCormick v. Trotter, 10 Sergeant & Rawle, 96.
[] Bank of I entucky v. Wister et al., 2 Peters, 325.
[*] Bliven v. New England Screw Co., 23 Howard, 431; Addison on Contracts, 853; Greenleaf's Evidence, sec. 292.
[*] Schooner Reeside, 2 Sumner, 569.
[] Dykers v. Allen, 7 Hill, 499; Woodruff v. Merchants' Bank, 25 Wen dell, 674.
[] Wheeler v. Newbould, 16 New York, 395.
[§] Bowen v. Newell, 4 Selden, 194.