Alvey, J.,
delivered the opinion of the court.
The amended declaration in this case contains the common counts in assumpsit, and also a special count, for that, on the 30th of December, j86i, in consideration that the plaintiffs, (appellees in this court,) at the request of the defendant, would deliver to the latter, for deposit, certain coin to the value of three thousand dollars, in ■ the gold and silver coin of the United States, the defendant undertook and promised to return and pay to the plaintiffs, on demand, a like sum in the gold and silver coin of the United States when the plaintiffs should, by check drawn upon the' defendant, ask and demand return and payment of the same; and that the plaintiffs, *c.onfiding in such undertaking and promise, did then deliver to the defendant the coin aforesaid, on the terms aforesaid; and did, on the 28th of May, 1864, by their check, demand of the defendant return and payment to them of the said sum of three thousand dollars in gold and silver coin of the United States, but the defendant refused, etc. To this declaration the defendant pleaded: 1st. That it never was indebted as alleged in the common counts; and, 2nd. That it did not promise as alleged in the special count. To these pleas, issue was joined.
At the trial, five bills of exceptions were taken by the defendant; four to the admissibility of evidence, and the fifth to the refusal to grant prayers offered by the defendant, and to *496 the instruction given the jury by the court. We shall consider and dispose of these several exceptions in the order in which they appear to have been taken at the trial.
1. As to the ruling of the court, to which, the first exception was taken, we discover no error of which the defendant could complain. The single entry in the bank book, kept by the plaintiffs with the defendant, of the deposit made on December 30th, 1861, was offered in evidence by the plaintiffs, for the purpose of verifying' the testimony of the witness Habliston, and of showing the nature of the particular entry made by the defendant at the time, as indicative of the character of the deposit in question. It was not offered to- show the general state of the account contained in the book, but simply to show the character of one entry therein, as that might reflect upon the nature of the contract under which the deposit was made. The plaintiffs, therefore, were not bound to put in evidence all the other entries in the book; and when the book was placed in the power of the defendant, to be used by it as evidence for any legitimate purpose that might be thought proper, we think nothing more could reasonably be required.
2. The second exception presents a question as to the admissibility of proof of usage, in reference to the import and effect of the entry of the 30th December, 1861, and the proper con*struction of all the facts and circumstances attending it. After giving evidence of the circumstances of the deposit with the defendant, the entry thereof in the plaintiffs’ bank book, the demand of the coin by check, and the price of gold at the time of the deposit, and also at the time of the demand, and the bank book, with certain balances struck therein, having been also given in evidence by the defendant, the plaintiffs then, by several witnesses, most of them bank officers, offered to prove: 1st. That according to the general and well known usage of the banks in the City of Baltimore, existing before and at the time of the deposit in question, and ever since, the entry, offered in evidence in this case, imports an agreement, on the part of the defendant, to return the deposit in kind; and that such evidence was offered for the purpose oí explaining a latent or patent ambiguity in the entry itself; ‘and, secondly, That, according to said usage, the striking of balances subsequently to such entry, does not work any change *497 in the character of the particular deposit where the balances are always more than the amount of the deposit. To the offer thus made, the defendant objected; and the court overruling the objection, the defendant excepted.
Upon this exception two questions arise:
1st. Whether the special contract, such as was sought to be established by proof of the usage stated in the offer, is specifically enforceable, irrespective oE what is known as the Legal Tender Acts, passed by the Congress of the United States; and, secondly, Whether such usage was admissible for the purpose of making out and establishing the special contract alleged in the declaration?
1. If the special contract for payment in specie could not be ■enforced otherwise than as for an ordinary debt, without regard to its special terms, of course the usage proposed to be proved would be without effect or operation, and, therefore, irrelevant and inadmissible. But we are of opinion that if the contract be established, as alleged in this case, the plaintiff would be entitled to recover in specie the amount of the coin, *with interest thereon, payable in like currency, from the time of the demand. There is no reason why such contract should not be specifically enforced. When a party agrees to pay in coin the constitutional standard of value, and the unquestioned legal currency of the country, there is no justice or propriety in allowing him to discharge his obligation by paying in a currency of less intrinsic value. Whether the Congress of the'United States has legalized a substituted currency, or whether it be competent for it to make legal tender of any other currency than gold and silver, are questions that do not affect, and are apart from the obligation of the contract. And, although Congress has declared the treasury notes, issued by virtue of the Act of February 23, 1862, and of subsequent Acts, to be lawful money, and a legal tender in payment of all private debts within the United States, it is not to be supposed that it was intended to impair and virtually nullify all previous special contracts, stipulating for payment in coin or bullion, or that such contracts should not be thereafter made and enforced, according to their special terms and stipulated value. Nor are we warranted in supposing that it was the intention of the Congress of the Union, by the passage of these Legal Tender *498 Acts, to abolish from circulation, and altogether supersede the gold and silver coin of the country as a legal currency. Nothing appears in the provisions of those Acts to require such construction, and it certainly would be justified by no mere implication. On the contrary, by the Act of February 25, 1862, certain dues demandable by the Government of the United States are required to be paid in coin, and certain of the obligations of the Government are to be paid in the same currency, as distinguished from treasury notes. And, by the Act of March 3, 1863, it was provided that on all contracts for the purchase or loan of coin, or upon security of any certificate, or other evidence of deposit, payable in gold or silver coin, there should be a. Government stamp fixed, otherwise the same to be void. Thus it appears not only that coin was never designed to be withdrawn *from circulation, and to cease to be a currency, but that the validity of special contracts, payable in coin, as distinguished from paper currency, is expressly recognized. And, accordingly, the Supreme Court of the United States, in the recent case of Thompson v. Riggs, 5 Wall. 678, in considering a question very similar to the one under consideration in this case, said: “ Contracts between a banker and his customers are doubtless required to be performed, and must be construed in the same way as contracts between other parties. When the banker specially agrees to pay in bullion or in coin, he must do so, or answer in damages for its value, and so, if one agrees to pay in depreciated paper, the tender of that paper is a good tender, and in default of payment, the promisee can recover only its market and not its nominal value.” Robinson v. Noble, 8 Pet. 198; McCormick v. Trotter, 10 Serg. & R. 96. “ But where the deposit is general, and there is no special agreement proved, the title of the money deposited, whatever it may be, passes to the bank, and the transaction is unaffected by the character of the money in which the deposit was made, and the bank becomes liable for the amount as a debt which can only be discharged by such money as is by law a legal tender.” Bank v. Wister, 2 Pet. 325.
2. The contract being specifically enforceable, the next question, then, is, was the usage offered to be proved admissible?
Unlike the case of Thompson v. Riggs, supra, just referred to, there was evidence in this case that the deposit in contro *499 versy was not made in the ordinary way, and without previous inquiry and negotiation in regard to it. It seems, from the testimony of Habliston, the plaintiffs’ agent, that it was not designed that the gold should be placed in the defendant’s bank as an ordinary deposit; and that of the design to make some special arrangement in regard to it, the defendant’s officers ■were made aware, and acceded thereto, and hence the designation of the deposit as coin in the plaintiffs’ bank-book. If, then, it was not an ordinary deposit, to be checked out in *the ordinary way by checks, payable in paper currency, what were the conditions and stipulations upon which the defendant was to account to the plaintiffs ? The simple entry of itself furnishes no evidence of such terms,' nor does the oral evidence of the agent making the deposit tend to establish any express stipulations in regard to the manner in which the deposit was to be paid; and we are at a loss to ascertain the intention of the parties, except as we may gather it by implication and presumption from the attending circumstances. If, however, there be a general and well established usage or custom upon the subject prevailing with the banks of the City of Baltimore, it may be presumed that the parties acted in reference to such usage, and that terms and conditions not contained in the written entry, and which were not by express words agreed upon at the time, were nevertheless, in the minds of the parties, and formed part of the contract. For, as it was said by Parke, B., in Hutton v. Warren, 1 M. & W. 475, “ it has long been settled that, in commercial transactions, extrinsic evidence of custom and usage is admissible to annex incidents to written contracts, in matters with respect to which they are silent. The same rule has also been applied to contracts in other transactions of life, in which known usages have been established and prevailed, and this has been done upon the principle of presumption that, in such transactions, the parties did not mean to express in writing the whole of the contract by which they intended to be bound, but a contract with reference to those known usages.” But such usages, to be admissible, must be shown to be well established, uniform, general and notorious; for it is from those attributes of the particular usage that the presumption arises that the contract was made with reference to it.
*501 In Thompson v. Riggs, supra, the court said that no evidence of general usage or custom, in the ordinary sense of those terms, was offered b3>' the plaintiff or appeared in the record, and, therefore, the evidence proposed *in that case was properly rejected. But it was conceded that customary rights and incidents universally attaching to the subject-matter of the contract, in the place where it was made, are impliedly annexed to the language and" terms of the contract unless the custom is particularly and expressly excluded. In the case now before.us, there is nothing, either in the evidence, or the nature of the transaction itself, to exclude the operation of the usage offered to be proved. It is doubtless true that evidence of usage will not be admitted to contradict or vary the express stipulations of a contract restricting or enlarging the exercise of the customary right; nor will it be admitted to control the general rules of law or the real meaning of the parties. But it is because of the absence of expressed stipulations in the contract under consideration, that proof of existing usage, in reference to which the contract is supposed to have been made, is admissible, in order to ascertain the real meaning of the parties. “ Omissions may be supplied, in some cases, by the introduction of such proof, but it cannot prevail over or nullify the express provisions and stipulations of the contract. So, where there is no contract, usage will not make one, as it can only be admitted either to interpret the meaning of the language employed by the parties in the absence of express stipulations, or where the meaning is equivocal or obscure.” Thompson v. Riggs, 5 Wall. 679; Bliven v. New Eng. Screw Co. 23 How. 431; Addison on Contr. 853; Greenl. Ev. sec. 292.
We are, therefore, of opinion that the court below committed no error in overruling the objection to the proffer made by the plaintiffs, and that evidence of the usage, such as was proposed to be shown to exist, was admissible for the purposes for which it was offered.
3. The third and fourth exceptions will be disposed of together, as they both present the same question. And in regard to the rulings of the court below, as stated in these exceptions, we think there was error. Instead of pursuing the proffer stated in the second bill of exception, and proving *as a fact the existence of a general and well known usage, prevailing *502 with the banks of the city, and existing before and at the time of the deposit in question, the plaintiffs undertook to establish the usage, by proving a few particular instances of dealing in some two or three of the banks, not including that of the defendant. This mode of proving the existence of the usage, even if the transactions referred to by the witnesses were of a character different from that proved by them, is wholly inadmissible. The transactions detailed by the witnesses, however, instead of proving the existence of a general, uniform and notorious usage upon the subject, according to our construction of them, prove just the reverse. The plaintiffs were bound to prove, under the proffer, and according to the rules of law upon the subject, the existence of the general usage and practice prevailing with the banks, as a fact, and not as a matter of judgment or opinion of the witnesses, deduced from the manner of dealing in a few instances, in particular banks. Lewis v. Marshall, 7 Man. & Gr. 729; Allen v. Bank, 22 Wend. 222; Adams v. Otterback, 15 How. 345.
We think, therefore, that it was error to allow such evidence as that contained in these exceptions to be submitted to the jury.
4. We come now to the consideration of the defendant’s prayers, set forth in the fifth exception. The first of these prayers was properly rejected. It assumes that the deposit sued for was made in the ordinary way, and could be paid in legal tender notes, and that the bank was not bound to pay in coin. If, as we have said, there be a special contract to pay in specie, nothing but specie or coin would gratify the demand. And it was for the jury to determine, from all the facts and circumstances attending the making of the deposit, whether such special contract existed. Habliston, the witness, proved that at the request of one of the plaintiffs, he went to the bank of the defendant to ascertain whether it would receive a special deposit; that he spoke to the receiving *teller of the bank, by whom he was referred to the cashier, who agreed to receive it, but requested the witness to put the coin in a box; and upon the witness saying he had no box, the cashier directed the teller to receive the gold as a special deposit, and so enter it on the book; that w'itness then went after the gold and took it to the receiving teller, who entered it on the plaintiffs’ book. *503 The entry is as follows: “ 1861. December 30th, cash, (coin,) $3,000.00.” At the time this deposit was made, the banks of the State had suspended specie payments, and gold coin, as compared with paper currency, was at a premium, with a strong prospect of greater depreciation of the paper money of the country. These facts were all before the jury, and from them the special contract declared on might or might not be found to exist. Upon the hypothesis that such special contract existed, the checks make proper demand, and the defendant was in default in not paying the amount in coin, instead of tendering it in treasury notes. It would, therefore, have been manifest error to grant the prayer, whereby the jury would have been instructed, unconditionally, that the demand was not sufficient, and the plaintiffs therefore not entitled to recover.
The second and third prayers were also properly rejected. What is lawful money of the United States, other than gold and silver coin, is a question of law, which should have been referred to the court to decide, and not to the jury. Nor is all the money emitted by the United States made legal tender, though authorized by law. But, by the second prayer, the jury would have been required to find for the defendant, upon being satisfied that “ the defendant was ready and prepared, and offered to pay the sum demanded in lawful money of the United States, other than gold and silver coin.” This was wholly inadmissible. ’
We think the court below was right in rejecting the defendant’s fourth prayer. It was, in the first place, calculated to mislead the jury, as well because of its abstract and general character, as of the impression likely to be produced by it, *that if the entries in the books, of the debit and credit, were found to be correct, all the special facts and circumstances attending the deposit of the 30th of December, 1861, were to be excluded from consideration. Prayers should be‘ so framed as to instruct, and not to mislead the minds of the jury, as to the manner of considering the facts before them.
But if it was intended by this prayer to assert, as matter of law, that from the state of accounts between the parties, as exhibited by the books in evidence, the jury were bound to conclude that there was no special contract in regard to the deposit in question; or that the benefit of such special contract if made *504 had been waived and abandoned by the subsequent checking on and balancing of the account, although upon each occasion of balancing the account an amount larger than the deposit in controversy was found to be to the plaintiffs’ credit; we cannot assent to the proposition. For while it is undoubtedly true, that, ordinarily, in a running account of debit and credit, it is the first item on the debit side of the account that is discharged or reduced by the first item on the credit side; and, in the case of a bank account, where all the sums paid in, form one blended fund, it is the first sum paid in that is first drawn out; as was decided in Clayton’s Case, 1 Meriv. 572; yet, if there be a particular mode of dealing, or a special agreement between the parties, the case may be varied. As in Lysaght v. Walker, 5 Bligh, N. S. 1, where an agent who had, in a previous account, charged himself with a balance due from him, continued to receive money for his principal and to pay money out, it was determined, that his payments were not necessarily to be first applied to the extinction of the previous balance, the receipts being equal to the payments. See also Taylor v. Kymer, 3 B.&Ad.320, and Henniker v. Wigg, 4 Q. B. 793. The subsequent payment of checks, and the striking of balances in the' bank book, from time to time, would not, therefore, necessarily extinguish the special deposit in question, if, from the facts and circumstances of the case, the parties, or either *of them appear to have had a different intention; and such intention is a subject of inquiry for the jury.
The defendant’s fifth prayer, we think, should have been granted. The proffer to prove usage, made in the second exception, does not appear to have been gratified, and the evidence allowed to be given to establish such usage, set out in the third and fourth exceptions, we have determined to be not only insufficient, but wholly inadmissible for such purpose.
And, upon the state of case then before the jury, the defendant’s sixth prayer should also have been granted. It very properly stated the law, upon the assumption that there was evidence before the jury from which they might find the existence of usage.
But we think the court below was right in rejecting the defendant’s seventh prayer. It proposed not only to exclude the *505 effect of usage upon the entry of the 30th December, 1861, but also to exclude all inferences and conclusions that might be drawn from the relation of the particular form and terms of the entry itself to the facts and circumstances under which it was made. This, if granted as an instruction, would have been erroneous.
As to the defendant’s eighth prayer, the plaintiffs were entitled to recover only in the event of the finding by the jury of the special contract to pay in coin, no demand having been made for payment in any other currency; and, although this prayer did not require the jury to specify in their verdict the character of the money found to be due, still the finding would have been certain enough to have enabled the court to render proper judgment to secure to the plaintiffs the benefit of their contract. The prayer should have been granted.
The ninth prayer of the defendant, in the nature of an exception to evidence, has already been disposed of, in determining the question raised by the third and fourth exceptions, as to the admissibility of the evidence offered to prove usage.
*It now remains for us to consider the instruction that was given to the jury by the court, in lieu of the various prayers that were offered and rejected.
This,instruction was erroneous, because it put to the jury to find ,a usage, of which, as we have said, there was no sufficient evidence. It was erroneous, however, in another particular. By it the jury were instructed that if they found the existence of the special contract declared on, and that demand had been mad'e and a refusal to pay in specie, “ that then the plaintiffs are entitled to recover a sum equal to the value of $3,000 in gold, on the 28th of May, 1864, with interest thereon.” The proof was that on the 28th of May, 1864, gold was at 85 and 86} premium. And, under this instruction, a verdict was found for $6,159.39, upon which judgment was rendered. This is justified, we think, by no principle of law or reason.
Suppose that, at the time of demand made, gold, instead of being at 85 premium, had been at 200 premium, and at the time of trial of this cause it had been at no premium at all, would it have been the proper measure of justice to have allowed a recovery of $9,000, with interest thereon from the time of de *506 mand, to discharge the debt of $3,000? It would be not only the triplication of principal that would be objectionable, but the allowance of interest on the original debt at the rate of eighteen per cent, instead of six, which would be a clear violation of the usury law of the State. If such a proposition is not maintainable, neither is the instruction under which the verdict in this cause was rendered, as the supposed and the actual proposition involved in the instruction are the same, only differing in proportions.
Gold and silver, at rates regulated by law, constitute the legal standard of value, and form a currency in which parties are entitled to deal to the exclusion of all other, when specially nominated in the contract; and, in this case, the prominent error in, the instruction of the court was in directing a conversion of the stable and intrinsically valuable gold coin *into the unstable and depreciated paper currency, and making the value of the latter, as compared with gold at a particular period, the measure, and that particular currency the medium of recovery. The suit was for a certain amount computed in gold currency, and the extent of the plaintiffs’ right of recovery, in the event that the special contract was found to exist, was the three thousand dollars in gold, with interest thereon from the time of the demand. There was no reason for the commutation of the one currency to the other. If, by the contract, the plaintiffs were entitled to receive gold, there is nothing in the law to prevent their getting it through the medium of a judgment. On the contrary, by our Code of Pub. Gen. Laws, Art. 32, sec. 1, it is declared that the species of coins struck at the mint of the United States, and foreign coins at rates regulated by Congress, “ shall be taken and recognized as the currency of this State.” In ordinary cases, the judgment is simply rendered for so many dollars and cents without characterizing the money in which it is to be paid; but, in a case like the present, it would be, not only proper, but necessary, to prevent any subsequent question being made as to the right to pay in a different currency, to designate in the judgment the species of money that the plaintiffs may be entitled to receive. In other words, the judgment should be rendered for so many dollars, payable in gold or silver, as the case may be. Differing *507 from the court below in the particular specified in this opinion, we must reverse the judgment appealed from, and award a procedendo.

Judgment reversed and procedendo awarded.

Note. — Bartol, C. J., and Brent and Grason, JJ., who did not sit at the argument of this case, after consultation with the other members of the Bench, concurred in the views expressed in the foregoing opinion.