HARRY MARION SIMS, AS EXECUTOR, ETC., OF J. MARION SIMS, DECEASED, PLAINTIFF, *v.* UNITED STATES TRUST COMPANY, OF NEW YORK, DEFENDANT.

*Commercial custom — when admissible to show the effect of a particular form of check.*

On November 15, 1882, there was deposited with the defendant corporation by one Crowell, an agent of J. Marion Sims, a check for $5,000, drawn by the said Sims to the order of the defendant corporation. A certificate of deposit was issued by the defendant acknowledging the receipt of the said amount from Crowell, in trust for J. Marion Sims, and making it payable to Crowell in trust. Crowell having subsequently drawn out the money and converted it to his own use, this action was brought by Sims' executor, to recover the amount so deposited.

Upon the trial the defendant, to escape being charged with notice of Sims' ownership of the money by reason of the form of the check, offered to prove "a well established commercial custom, existing for many years throughout the United States, whereby banks and trust companies and other financial institutions, in the absence of a restrictive indorsement, accept as cash checks drawn to their own order, and deposit or apply the same as directed by the persons presenting such checks."

*Held*, that the court erred in refusing to admit proof of such custom.

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict had been directed in favor of the plaintiff.

*Wm. A. W. Stewart*, for the plaintiff.

*J. Alfred Davenport*, for the defendant.

BRADY, J.:

This action was brought to recover the sum of $5,000 alleged to have been deposited with the defendant, a banking corporation, by the plaintiff's testator. The complaint alleges the deposit of the sum named, and that it was received by the defendant for the use of the plaintiff's testator, J. Marion Sims ; and further, that in consideration of the deposit the defendant undertook and agreed with the testator to hold the same in trust for him, to be paid on demand only, upon his written check or order or written acknowledgment in receipt thereof. It then alleged the death of the testator, the issuing of letters testamentary and the demand of the plaintiff for the amount of money deposited. The answer admits the demand and denies the making of the deposit and the other allegations in the complaint. For a separate defense it alleges that the $5,000 already mentioned was deposited on or about the 17th of November, 1882, by G. L. Crowell, in trust for the plaintiff's testator, who obtained a certificate, which is as follows :

"CERTIFICATE OF DEPOSIT.
"No. A, 28,712.

"$5,000.                          "NEW YORK, *Nov.* 16, 1882.

"These may certify that the United States Trust Company, of New York, has received from G. L. Crowell, in trust for J. Marion Sims, the sum of five thousand dollars of current funds, upon which the said company will allow interest at the annual rate of three per cent from this date, and on five days' notice will repay the like amount in current funds, with the interest, to the said G. L. Crowell, in trust, or his assigns, on the return of this certificate, which is assignable only on the books of the company. The right is reserved by the company, upon giving ten days' notice, to reduce the rate or discontinue the payment of interest on this certificate, or pay off the principal. Such notice to be served personally, or through the post-office, directed to the address named on the books of this company.

"J. S. CLARK,
"H. L. THORNELL,                          "2 *V. President.*
      "*Secretary.*"

That Crowell was then the general agent of the plaintiff ; was authorized to deposit the sum in trust for the testator ; that the

latter ratified his act in so depositing it, and that prior to December 2, 1882, Crowell drew out the sum in three installments and gave his receipt therefor. The receipt referred to is as follows:

" Received, the sums on account of principal and interest of the within certificate, No. A, 28,712, as expressed against our signatures respectively:

| When due. | When paid. | Interest. | Principal. | Signatures. |
|---|---|---|---|---|
| 11 | 1882.<br>Nov.    22 | | $3,000 | G. L. Crowell, in trust. |
| 2 | "      29 | | 1,050 | G. L. Crowell, in trust. |
| | Dec. 1, '82 | $3.32 | 950 | G. L. Crowell, in trust." |
| | | | $5,000 | |

For a third defense the defendant further answering, and repeating the admissions and denials aforesaid, alleges and avers, on information and belief, that the plaintiff's testator, by exercise of ordinary care, might have discovered shortly after the 16th day of November, 1882, that said Crowell had deposited said sum of money in his own name in trust for him, and upon making said discovery it would have been his duty at once to have notified the defendant of the claim sought to be enforced in this action; that the defendant received no notice of said claim until the 1st day of January, 1884, or thereabouts; that had the defendant been notified of said claim within a reasonable time after said 16th day of November, 1882, it would have refused to pay any part of the sum of money so deposited to said Crowell. Or if the whole or any part of said money had been paid it might have recovered the same from said Crowell, as it is informed and believes. And the defendant is advised and charges that by reason of the premises the plaintiff and his testator were guilty of gross negligence and laches sufficient to deprive the plaintiff of any cause of action he might otherwise have had against the defendant in the premises.

The plaintiff, after proving the death of the testator and the

appointment of the plaintiff as executor, offered in evidence a check canceled as paid, and rested.    The check is as follows:

"CORNER OF CANAL AND THOMPSON STREETS, )
"No.————        NEW YORK, *November* 15, 1882.    )

"PEOPLE'S BANK OF THE CITY OF NEW YORK:

"Pay to the order of the United States Trust Company five thousand dollars in current funds.

"$5,000.            (Signed)        J. MARION SIMS.

"Indorsed: For deposit in Manhattan Co. U. S. Trust Company of N. Y.    H. L. Thornell, Secretary."

Whereupon the defendant moved for a dismissal of the complaint upon the ground that no such contract was shown to have existed as that alleged in the complaint, and that the mere fact that the check was drawn by J. Marion Sims was not notice to the defendant that the money belonged to him.    The defendant sought to prove upon the trial a custom, and relative thereto made the following offer: "The defendant offered to prove a well established commercial custom, existing for many years throughout the United States, whereby banks and trust companies and other financial institutions, in the absence of a restrictive indorsement, accept as cash checks drawn to their own order, and deposit or apply the same as directed by the persons presenting such checks."

The testimony was offered for two purposes, first to prove custom; and second to prove that the defendant accepted and disposed of the check without actual knowledge of any title in the testator. The plaintiff's counsel objected to the offer, which was rejected and an exception taken.

The defendant also offered in evidence a power of attorney which was objected to and excluded.    It was as follows:

"*Know all men by these presents*, that I, J. Marion Sims, of the city of New York, have made, constituted, appointed and by these presents do make, constitute and appoint Gilbert L. Crowell, of the same place, my true and lawful attorney for me and in my name, place and stead, *to collect and receive all sums of money* now due, or hereafter to become due to me, whether from rents, accounts, bonds and mortgages *or otherwise*, and upon payment thereof to give good and sufficient receipts or other discharges therefor.    Also to

transact all my ordinary bank business at the People's Bank in the city of New York, to draw checks on said bank, and to indorse checks, promissory notes, drafts and bills of exchange for collection or deposit, this power of attorney to remain in force *until said bank is notified of its revocation*; giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof.

In witness whereof, I have hereunto set my hand and seal the fifth day of April, in the year one thousand eight hundred and seventy.

[50c. Int. Rev. Stamp.]        ·        J. MARION SIMS.    [L. S.]

Sealed and delivered in presence of
CHAS. I. BUSHNELL.

It then proved by competent testimony that Mr. Gray, a friend of the testator, having heard of the failure of Mr. Crowell, but without any authority from the testator, intervened for the purpose of securing to the testator the $5,000 which had been paid by the defendant to Mr. Crowell under the certificate of deposit, to which reference has already been made. He obtained from Mr. Crowell a note of a mining company on which an action was brought and judgment recovered in Utah territory, the amount of the note being $6,200, upon which nothing was recovered.

The doctor was at this time in Europe, and upon his return he was advised of the acts of Mr. Gray. The latter was asked upon the trial: Q. Did Dr. Sims ever ratify your act in sending out this note for collection to Utah? A. No; he never did. Q. Did Dr. Sims ever have any transactions with Mr. Thomas Marshall in regard to this note, except through you? A. Not that I know of. Q. And when you told Dr. Sims what you had done in regard to this note, he disavowed the transaction and said that he looked to the Trust Company? A. I can't say that word " disavowed;" he said that he looked to the Trust Company; that he deposited the money with them; sent it to them for deposit. These incidents were urged by the defendant as a ratification of the payment of the

sum deposited to Mr. Crowell, by whom the deposit was made, as the agent of the testator.

Upon the conclusion of the testimony the defendant's counsel again moved for a dismissal of the complaint for lack of conformity of the proof to the cause of action set forth in the complaint. This motion was denied and an exception taken.

He then moved for a dismissal of the complaint, on the ground that there was no proof of notice to the defendant that the fund alleged to have been received by it was the property of Dr. Sims or of the plaintiff. That motion was denied and an exception taken.

He then moved for a dismissal of the complaint for the reason that there was no proof of any damage to the plaintiff by reason of any of the acts proven against the defendant. This motion was also denied and an exception taken.

He then moved for a dismissal of the complaint, on the ground that the evidence shows that the plaintiff or the plaintiff's testator ratified the act of Mr. Crowell and the transaction so far as the defendant was concerned in it. That motion was also denied and an exception taken.

The defendant's counsel then asked that two questions of fact should be submitted to the jury. First. Whether the Trust Company had notice of the title of the testator to the check, and, secondly, whether the payment made under the circumstances detailed was not ratified by the subsequent conduct of the testator, as also detailed in an apparent ratification of the act of Mr. Gray in sending the note mentioned to Utah for collection, which was received from Mr. Crowell for the purpose, it was hoped, of paying the debt. The plaintiff's counsel, after all these incidents, moved that the court direct a verdict for the plaintiff for the full amount, which was done, and to which an exception was taken by the defendant.

All the important facts and circumstances and the salient features of this case are thus detailed prior to the expression of any legal views of the question involved. Extending to the defendant all the advantages which accrue from the facts stated, so far as they tend to relieve it from responsibility, it would seem to be beyond cavil that the plaintiff should succeed, for the reason that the check

drawn by Dr. Sims was payable to. it and not to anyone else, and not to or for the credit of anybody else. It was a transfer in effect of the sum of $5,000 from the People's Bank of the city of New York; upon which the check was drawn, to the United States Trust Company and to the credit of the drawer, Dr. Sims, and no other person. The attempt of the defendant to secure immunity from responsibility by proof of the power of attorney is ingenious but not, it would seem, available, for the reason that the money was paid without any knowledge, according to the record of .the existence of that instrument, and if it were necessary to go into details about its effect in regard to the fund in question, it might be shown, it is thought, that it had no application.

The difficulty in the case arises however from the offer to prove a custom which, as we have seen, was to show a well established commercial usage existing for many years throughout the United States; whereby banks and trust companies and other financial institutions, in the absence of a restrictive indorsement, accept *as cash* checks drawn to their order, and deposit or apply the same as directed by the person presenting them. It is quite apparent that the application of such a usage authorized the certificate in the form in which it was issued, Mr. Crowell having presented the check and being entitled, therefore, to the direction contained in it that it should be paid to him in trust or to his assignees.

It is contended by the learned counsel for the plaintiff that this custom overrides the law, but this does not so clearly appear. It is true that custom and usage are not permitted to have effect when they contravene any established rule of law. (2 Greenl. on Ev., § 249.) And that usage cannot alter the law. (*Thompson* v. *Riggs*, 5 Wall., 663, 980.) And, further, that "a clear, certain and distinct contract is not subject to modification by proof of custom. Such a contract disposes of all customs and practices by its own terms, and by its terms alone is the conduct of the parties to be regulated and their liability to be determined." (*Simmons* v. *Law*, 3 Keyes, 217.) It is true, also, that usage is admissible to explain an ambiguity, but it is never received to contradict what is plain in a written contract, although this is a repetition in another form of the doctrine already expressed. (*Collender* v. *Dinsmore*, 55 N. Y., 208 ; *Barnard* v. *Kellogg*, 10 Wall., 383, 391; *Bradley* v. *Wheeler*, 44 N. Y., 495;

*Walls* v. *Bailey*, 49 id., 464; *Wheeler* v. *Newbould*, 16 id., 392.)

But these rules are not applicable to the transaction in question, for the reason that the contract is not expressed in the instrument by which the deposit was made. It is a direction to the People's Bank to pay to the defendant a certain sum of money, whether for the benefit of the holder or the drawer does not appear from the contract itself, although, as already suggested, the fair inference is that it was intended as a transfer from one depository to another, and although the purpose of such transfer, it must be conceded, was not expressed and does not appear inferentially or otherwise. The transaction is, however, converted into a well understood contract by force of the usage, if it existed as asserted by the defendant, for the reason that the presenter has the right under its efficacy to require the application of it as he desires. The language employed in the case of *Walls* v. *Bailey* (*supra*) elucidates and controls. It is there said " every legal contract is to be interpreted in accordance with the intention of the parties making it."

A usage (with a limitation hereafter noticed), when it is reasonable, uniform, well settled, not in opposition to fixed rules of law, and not in contradiction of the express terms of the contract, is deemed to form a part of the contract, and to enter into the intention of the parties. Parties are held to contract in reference to the law of the State in which they reside, for all men being bound to know the law are presumed to contract in reference to it. And so they are presumed to contract in reference to the usage of the particular place or trade, in or as to which they enter into an agreement, when it is so far established and so far known to the parties that it must be supposed that their contract was made in reference to it.

Applying these principles it must be assumed that Dr. Sims knew when he gave Mr. Crowell the check, there being no restrictive indorsement, that the latter had the right to direct the application of it in such way as he thought proper. The usage embraced this right and authorized him to demand its recognition by the defendant. If there had been in the check any direction to place the sum named in it to the credit of the drawer or to his account, or to or for his benefit, it would have contained the elements of a contract

to which the usage would not have applied. But, as already suggested, it was a bald, naked direction to pay a sum of money to the trust company placed in the hands of Crowell who was empowered to deposit it, and according to the usage, if one were established, to direct the application of it in such way as he thought proper. This usage does not interfere with any rule of law. On the contrary, it is a declaration of a rule governing the relations between the parties, springing out of an instrument called a check which, according to usage, is incomplete in its terms and, therefore, subject to explanation and enlargement.

From this review it must be clear that the defendant should have, been permitted to prove the usage, and the exclusion of it was erroneous and demands that a new trial should be granted. The custom itself would seem to be a startling one, but nevertheless it may exist with numerous others equally surprising.

The judgment must be reversed and a new trial ordered, with costs to abide the event.

Davis, P. J., concurred.

Present — Davis, P. J., and Brady, J.

Judgment reversed, new trial ordered, costs to abide event.