## WEIL BROS. v. YAZOO YARN MILLS.

Circuit Court of Appeals, Fifth Circuit.
January 28, 1930.

No. 5524.

J. H. Thompson, of Jackson, Miss., and R. E. Steiner, Jr., of Montgomery, Ala. (Robert H. Thompson and J. Harvey Thompson, both of Jackson, Miss., and Robert E. Steiner, Jr., of Montgomery, Ala., on the brief), for appellants.

George W. May, of Jackson, Miss., for appellee.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. The appellants sued the appellee in the District Court of the United States for the Southern District of Mississippi for refusing to accept 50 bales of long staple cotton, part of a purchase of 125 bales, sold by appellants to appellee, of which appellee accepted and paid for 75 bales. The contract was made in January, 1920, by correspondence, and was for the sale and purchase of 125 bales of cotton, equal to sample submitted, at 72½ cents per pound, for shipment to Yazoo City, Miss., not later than May or June, at buyer's option, buyer to pay interest at 6 per cent. and carry insurance till delivery of the cotton. Appellants had 125 bales of cotton in New Orleans to apply to the purchase, and so notified appellee. Appellee rejected 50 bales of the cotton at New Orleans, and the appellants acquiesced in the

rejection. On March 15, 1920, appellants wrote appellee that they would replace the 50 bales rejected. On May 26, 1920, appellants notified appellee that they were ready to ship 75 bales from New Orleans and 50 bales from Forest City, Ark., to which appellee assented. On June 23d, appellants notified appellee that they had shipped the 125 bales and were drawing on appellee for the purchase price thereof. On June 25th, appellee wired appellants that 50 bales of the cotton shipped to Yazoo City from Arkansas was wrong and was rejected. On June 28th, appellants wrote appellee that they were taking the matter up with the party from whom they had bought the cotton. On June 30th, appellants wrote appellee that they had written the party from whom they had bought the cotton, asking what he was going to do about it, and were waiting to hear from him, and asked appellee to advise them what allowance they would accept for the deficient cotton, to which appellee replied that they would not accept any of the 50 bales from Arkansas. On July 1st, appellants wired appellee, insisting on payment of the draft for the entire 125 bales, stating that, if they found the 50 bales not to be up to grade, they would insist on the Memphis shipper replacing immediately, and that appellants would stand back of the Memphis shipper and protect appellee. Appellants agreed finally to accept payment for the 75 bales separately, and appellee paid the part of the draft representing the 75 bales, and refused to pay the part representing the 50 bales from Arkansas. Appellants' proof tended to show that 29 of the 50 bales were up to grade. Appellee's proof tended to show that none of the 50 bales was up to contract requirements. Appellee rejected the entire 50 bales shipped from Arkansas, and bought 50 bales elsewhere to replace it. The market price of cotton declined, and appellants lost thereby on the rejected cotton, and for that loss, the amount of which is not in dispute, they sued.

■ If the terms of the contract of sale and purchase be alone looked to, appellee was not bound to receive the 50 bales upon any tendency of the evidence. The purchase was an entire one, and appellee was not required to accept less than the 50 bales, necessary to make up the 125 bales bought by it; nor was appellee bound to accept any cotton that did not come up to contract requirements. Any custom that required this would be an unreasonable one. It was undisputed that at least 21 bales of the Arkansas cotton were not up to contract requirement. So far as the con-

tract went, therefore, appellee was justified in refusing to accept any part of the 50 bales. Time was of the essence of the contract. The cotton was to be used in appellee's mill, and it was needed to keep the mill going, and this was known to appellants. Delivery was required to be made not later than June 30th. On June 30th, delivery of 50 bales of right cotton had not been made, and no offer had been made by appellants, either to replace the bad cotton or to arbitrate. On that date they wrote appellee that they had bought the 50 bales from a Memphis staple house, had written it regarding the deficiency, were waiting to hear from it, and inquired at what allowance appellee would accept the shipment. Until after the time for delivery according to the terms of the contract had expired, there had been no delivery, no offer to replace the bad with good cotton, and no offer to arbitrate. On July 1st appellants wired appellee to receive the 50 bales, stating that, if appellants found it was not up to grade, they would insist on the Memphis shipper replacing it immediately, and would stand back of him and protect appellee.

Appellants relied upon an alleged custom or usage in the cotton trade between the shipper and the mill to the effect that, when cotton is claimed by the mill not to be up to specifications, the shipper is notified by the mill that the cotton is wrong, and given the privilege of going over the cotton alone or in connection with the mill. If the shipper does not agree that the cotton is wrong, the shipper has the right to ask for an arbitration. If the arbitration finds the cotton to be wrong, the shipper must replace the cotton held to be wrong. If the shipper concedes that the cotton is wrong, upon going over it at the mill, it is the duty of the shipper to remove the bad cotton and replace it with good cotton, which it has a reasonable time to do. Appellants' contention is that this custom takes the case out of the terms of the contract.

■ Conceding that there is evidence tending to establish the existence of such a custom, and that under some circumstances it might be held to be a good custom, it could not operate to vary the express and unambiguous terms of a contract between the parties. Thompson v. Riggs, 5 Wall. 663, 18 L. Ed. 704; 23 R. C. L. 1404. The contract between appellants and appellee entitled appellee to receive delivery of the entire 125 bales of good cotton not later than June 30th. No custom could vary this express and unambiguous term of the contract, so as to require it to accept in substitution of bad cotton, which

it had rightly rejected, other good cotton, after the contract period for delivery had expired. Time of delivery being of the essence of the contract, the first offer to replace good for bad cotton came too late.

Again, the offer contained in the appellants' wire of July 1st was not in line with the custom testified to by the witnesses. It asked appellee to receive the bad cotton, pay for all the cotton, on an assurance that, if appellants thereafter found the cotton was not up, they would insist upon their Memphis shipper replacing immediately the bad cotton, would stand between the appellee and the Memphis shipper, and protect appellee. The alleged custom permitted the seller to go over the cotton, making good what he admitted to be bad, arbitrating what he denied to be bad, and replacing what the arbitration found to be bad. The custom did not require of appellee to have any relation to the Memphis shipper, or to look beyond its immediate seller (appellants in this case). Appellants made no proposal to arbitrate. On the contrary, appellants' offer was conditioned upon their own finding the cotton to be bad.

Again, there had already been one substitution of the rejected 50 bales in New Orleans by the 50 bales shipped to Yazoo City from Arkansas. The evidence as to the alleged custom does not purport to cover unlimited substitutions. If it be held to apply to more than one, it would equally apply to as many as the seller desired to make. Such a custom would be unreasonable and bad.

Giving due effect to the evidence as to the existence of a custom, we think it could not be made to cover more than one substitution; that the one substitution would come too late, if first proposed after the time for delivery by the terms of the contract had expired; and that it would not avail, if it was variant from the custom which the proof tended to establish.

In view of our conclusions, the exception based on the refusal of the District Court to admit the evidence of the witness Twilford, as to the proper classification of the cotton becomes of no importance. However, the ruling of the court that the witness could not legally testify to a classification based on samples, which he did not know of his own knowledge to have been taken from the cotton in question, was correct.

The action of the District Court in directing a verdict for defendant (appellee) is justified by the record, and the judgment is affirmed.