WILLIAM ROBINSON, JUN., PLAINTIFF IN ERROR v. WILLIAM NOBLE'S ADMINISTRATORS.

184

The case was submitted to the court on printed arguments, by Mr Watts, for the plaintiff in error; and by Mr Fetterman and Mr Colwell, for the defendants.

Mr Watts, for the plaintiffs in error.

186

Mr Fetierman and Mr Colwell, for the defendant in error, contended:

190

Mr Justice M'LEAN delivered the opinion of the Court.

This case was brought into this court, by a writ of error to the district court, which exercises the powers of a circuit court, for the western district of Pennsylvania.

The plaintiffs in the district court, commenced an action. of covenant on the following instrument. "Article of agreement, entered into this 24th day of February, between William Noble of the city of Cincinnati of the one part, and William Robinson, Jun. of the city of Pittsburgh of the other part, witnesseth: that the said Noble hereby agrees, stipulates and binds himself, to and with the said Robinson, to transport and deliver to said Robinson, in the steamboat Paragon, a certain quantity of subsistence stores, for the use of the United States army, supposed to amount to about thirty-seven hundred barrels, estimating one half of the quantity of stores as flour barrels, and the other half as whiskey or pork barrels, the said Robinson delivering one half of the same between the 1st and 10th of March to said Noble, at Cincinnati, and the other half by the 30th of March, at the usual place of deposite, near the mouth of the Ohio; the delivery of which stores is to be made and completed in the order in which they are received, at the town of St Louis aforesaid, on or before the 15th day of April next ensuing. In consideration whereof, the said Robinson hereby agrees and binds himself to pay to

the said Noble, one dollar and fifty cents per barrel, one half whereof is to be paid on the delivery of said stores at St Louis, in specie funds or their equivalent, and the other half in Cincinnati, in the paper of banks current therein, at the period of the delivery of said stores at St Louis. In testimony whereof, the parties signed and sealed the instrument, the 24th of February 1821."

Under the agreement was the following memorandum. "It is understood that the payment to be made in Cincinnati, is to be in the paper of the Miami Exporting Company or its equivalent." Signed, William Robinson, Jun.

This covenant being before the jury, the defendant's counsel prayed the court to instruct them, that the plaintiffs could only recover the stipulated price for the freight actually transported, and that they were entitled to no more than the specie value of the notes of the Miami Exporting Company Bank, at the time the payment should have been made at Cincinnati. But the court refused so to instruct the jury, and directed them that they were authorised to take "all the circumstances into consideration, and to make an allowance for any freight which the master had it in his power to transport, in addition to that which was furnished. That if the lading should not be complete, without the default of the master, the rule is to estimate the freight by means of an average, so as to take neither the greatest possible freight, nor the least, and that such average is the proper measure of damages.

And the judge further instructed the jury, that "the defendant having failed to tender to the plaintiff the paper of the Miami Exporting Company, or its equivalent, at the time mentioned in the contract, and the plaintiff having performed all he covenanted to perform, is by the laws of Ohio entitled to recover the numerical value of the paper of the Miami Exporting Company in specie, with interest." And the jury, under these instructions found for the plaintiff two thousand three hundred and seventy-seven dollars and thirty-six cents in damages.

On this statement of the case, the question arises, whether the court erred in refusing to give the instructions prayed for by the defendant. And first, whether the plaintiffs were enti-

tled to recover in damages more than the stipulated price for the freight actually transported.

By the article, Noble agreed with Robinson to transport "in the steamboat Paragon, a certain quantity of subsistence stores, &c., supposed to amount to about thirty-seven hundred barrels," &c.; "in consideration whereof, Robinson binds himself to pay one dollar and fifty cents per barrel." Under this agreement, only three thousand one hundred and five barrels were delivered for transportation.

The plaintiff's counsel insist, that Robinson was bound by his agreement to deliver the number of barrels specified, subject only to a reasonable qualification of the words "supposed to amount to thirty-seven hundred barrels;" and that by this rule, the number could not be reduced below thirty-six hundred barrels.

It is clear, from the agreement, that the amount of freight was not ascertained, and that Robinson did not covenant to deliver any specific number of barrels. It was conjectured, there were thirty-seven hundred, and the payment for the transportation was to be at the rate of one dollar and fifty cents per barrel.

The master of the steamboat Paragon proved on the trial, that the second trip which the boat made under this contract, she had not more than two thirds or three fourths of a cargo. And it also appeared, that the reason assigned why a greater number of barrels were not delivered to the master of the steamboat was, that one or two flat-boats, laden with flour, designed as a part of the second cargo of the Paragon were sunk above Cincinnati.

If Robinson had bound himself to deliver a certain number of barrels, and had failed to do so, Noble would have been entitled to damages for such failure; but a fair construction of the contract imposed no such obligation on Robinson, and consequently, the breach assigned in the declaration is not within the covenant.

It is unnecessary to determine, whether, under a certain state of facts, and with proper averments in the declaration, damages might not be recovered, beyond the price per barrel for the cargo transported, as such a case is not before the court.

There is no pretence that Robinson did not deliver the whole amount of freight in his possession, at the places designated in the contract. In this respect, as well as in every other, in regard to the contract, he seems to have acted in good faith. And he was unable to deliver the number of barrels supposed, either through the loss stated or an erroneous estimate of the quantity. But, to exonerate Robinson from damages on this ground, it is enough to know, that he did not bind himself to deliver any specific amount of freight. The probable amount is stated or supposed, in the agreement; but there is no undertaking as to the quantity.

When the circumstances under which this contract was made are considered ; the contingencies on which the delivery of the freight, in some degree depended : the reason is seen, why cautious and indefinite language was used, in regard to the number of barrels, in the contract. And the result proved that this caution was judicious; as, if the contract had stipulated for a specific amount of freight, Robinson would have been bound to pay the full price of transportation, notwithstanding the loss he sustained.

The court think that there was no breach of the covenant, in this respect, on the part of Robinson, and that the district court erred in not giving the instruction, as prayed for by the defendant.

The second instruction asked by the defendant's counsel in the court below was, that the plaintiffs were not entitled to recover more than the specie value of the notes, in which the payment was to have been made, at Cincinnati.

It was proved, on the trial, that the notes of the Miami Exporting Company, in which, by the contract, the payment was to be made or other notes of equal value, were not worth more in specie, than sixty-six and two thirds per cent.

The express provisions of the contract show, that the payment at Cincinnati was not to have been made in specie, or what was equivalent to specie. The notes of the Miami Exporting company were substituted by the parties, as the standard of value, which should discharge this part of the contract, and the payment of those notes, or any others of equal value, was all that Noble had a right to demand. But, it is contend-

ed, that as the payment was not made at the day, it must needs be made in specie, and to the full amount of the sum agreed to be paid in depreciated paper.

In what does this covenant to pay differ from an agreement to deliver a certain quantity of flour, or any other commodity on a given day.

The notes of the Miami Exporting Company purported to be money, and may, to some extent at the time, have circulated as such in business transactions: but it is manifest, they were not considered as money by the parties to this contract; but as a commodity, the value of which was to be ascertained by the amount of specie it would bring in the market. And if it should not be convenient for Robinson to make the payment in these notes, he was permitted to make it, by the contract, in any other depreciated notes of equal value.

Robinson failed to make the payment at the time, and is he now bound to pay the nominal amount of these notes in specie? What damage has Noble sustained by the non-payment? Certainly not more than the value of the notes, if they had been paid.

Had these notes been equal to specie on the day of payment, Robinson was bound to pay them, or what was of equal value. If they had depreciated to fifty cents in the dollar, Noble was bound to receive them, in discharge of the covenant. Each party incurred a risk in the fluctuations of the value of the notes specified; and nothing could be more unjust, or more opposed to the spirit and letter of the contract, than to require Robinson to pay in specie, the nominal value of these notes. The law affixes no such penalty for default of payment. Robinson can only be held liable to make good the damages sustained through his default; and the specie value of the notes, at the time they should have been paid, is the rule by which such damages are to be estimated.

In this view, it appears that the district court erred in refusing to give the second instruction prayed for by the defendant's counsel; on this ground, therefore, as well as the one first noticed, the judgment of that court must be reversed, and the cause remanded for further proceedings, in conformity with this decision.

This cause came on to be heard on the transcript of the record from the district court of the United States, for the western district of Pennsylvania, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said district court in this cause be, and the same is hereby reversed, and that this cause be, and the same is hereby remanded to the said district court, with directions that further proceedings be had therein, according to law and justice, and in conformity with the opinion of this court.