Ashburn, J.
This action, as developed in the facts, is peculiar, and so far as we have been able to discover, has no mate in the books. The authorities cast light upon some of its features, but in the main it rests upon its own facts. On May 29, 1856, Eosdick traded to Greene two hundred and twenty shares of Marietta and Cincinnati Railroad stock, estimated at fifty-five cents on the dollar, or in gross $6,225.60. The actual market value of the stock, at that time, was from fourteen to sixteen cents on the dollar. June 1,1856, Eosdick borrowed from Greene one hundred and nine shares of the same stock, and on the 12th of January, 1857, he borrowed the remaining one hundred and eleven shares. At each borrowing Eosdick gave Greene a written obligation showing the number of *491 shares of stock borrowed, and a promise to return the-shares of stock on demand.
By the writing Eosdick placed it in the power of Greene-to require him to return the shares of stock at his pleasure, on demand. It was not the ordinary contract, familiar-in t-he books, of a promise to pay a given sum or debt in specific articles, but was a loan of railroad stocks greatly depreciated. Stocks of this kind have ever been subject to such fluctuations in price that their market value could 'not and now can not be estimated with any certainty at any time in the future. Like their creator, man, they are-alive to-day and dead to-morrow. This fact was doubtless well known to these parties, who are business men of good capacity. We assume as a fact that this contract, with its-conditions, was made with reference to this financial fact. They then knew the market value of this stock, gave to it a. trading price, and each for himself calculated the chances of its appreciation and depreciation in the market. It was then heading downward. Greene, for reasons satisfactory to-him, believing the stock would appreciate, armed himself with the power to demand a return of Marietta and Cincinnati Railroad stock at his pleasure. On the other hand, Eosdick had faith that the market price of this stock would depreciate, and agreed to return Marietta and Cincinnati Railroad stock when demand should be made, as he could pay them back at a less cost.
We are in harmony with the facts and relations of these parties in treating them as acting with full knowledge of the facts as they existed, and accepted the conditions that-might transpire, in the financial and political community, in relation to what might be the future character and value of this railroad company’s stock. The transaction, in the writing,- is denominated a borrowing of stock; yet no doubt exists but that Eosdick acquired a present title to-the stock and could transfer to his purchaser a good title. Eosdick’s acquisition of title raised an obligation in favor of Greene, to be liquidated, according to the terms of the- *492 ■contract, by a return, on demand, of Marietta and Cincinnati Railroad stock in like quantity and quality.
This loan of stock, while not strictly a mutuum, assimilates nearer in principle to that doctrine of the law than any other. A mutuum “ is a loan for use and consumption, the thing being bailed to be consumed and an equivalent' in kind subsequently returned.” 2 Addison on Contracts, 462. “ In case of a loan, by way of a mutuum, the borrower is bound to restore, at the time agreed upon, or ■within a reasonable period after request, an article of the same kind and quality as originally lent to him.” Idem, 468. Applying this doctrine of mutuum, Fosdick would be required, ■ within a reasonable time after demand, to return to Greene an equal number of shares of the stock, or certificate of old stock, of the Marietta and Cincinnati Railroad Company, because that would represent the quality and quantity of the thing borrowed.
In consonance with this doctrine it has been held, in numerous cases, that where payment in specific articles forms a material element of the written obligation, and no time is named for performance, before the promisor can be put in default and made liable to respond in money, there must be a demand and refusal. 20 Wend. 193; 5 Cowen, 516; 10 Vt. 274; 1 Carter (Ind.), 224; 1 Blackf. 174; 10 Ga. 560; Morris (Iowa), 396. On the question of the measure of damages in such cases there is some difference of opinion. We think, however, the rule should be the market value of the specific thing in kind at the time ■default is made, whether default be made by act of the parties or by operation of law.
In this case the parties have contracted that Fosdick may discharge the obligation by a return of stocks when they are demanded, and Greene has reserved to himself the right to demand a return of stocks. As no default on the part of Fosdick can occur until demand is made of him for a return of stocks, Greene can have no cause of complaint, if by reason of his own neglect to make the demand •the stocks depreciate. He is to fix a time for their return, *493 and if at or before that time the stocks become worthless he must bear the loss. No claim for a recovery of money, in such case, can arise until demand is made, and if no demand is made until the commencement of the action, and that act is treated as a demand, and then the stocks are worthless, nominal damages can only be recovered.
It is urged in argument that the stock Greene transferred to Eosdick in 1856-7, had become in 1868 worthless ; had become extinct defacto and dejure by reason of the hopeless insolvency of the company and forced sale of its franchises and property, and that this avoids all necessity for a demand. ¥e do not think that is the law of this case. Where the mutuary is chargeable with no fault in relatipn to the article borrowed; has concealed no vice in the mutuum; has done no act himself, nor been the agency in procuring others to depreciate its value, and the mutuum to be discharged in kind becomes depreciated in value, less or more, the measure of damages is not the original consideration, but the value thereof on demand and refusal or day of restoration, in kind or money. As disclosed, by the facts in this action, Eosdick had no more agency in depreciating the value of Marietta and Cincinnati Railroad stock,, than Greene. In fact, neither of them contributed directly to that result. It was depreciated and became valueless by reason of its representing a something destitute of intrinsic value.
Where the mutuum is in special railroad stocks, greatly below par in value, subject to the well-known financial vicissitudes of that commodity in the market, the creditor must exercise reasonable diligence in the assertion of his rights. What is safe diligence for him in such case will depend upon the facts and law of each case. Where, by the terms of his contract, he is charged with the act of putting the debtor in default, he cannot safely lay by for many years, and until the railroad company is obliterated — its stock ceases to be of any intrinsic value — its rights and property all sold under decrees of court — deeds of conveyance, by the company, made, of all its rights, property and *494 franchises — its very existence, in every element, absorbed .in another and different railroad organization. Such laches is fatal. The fact that Greene delayed commencing an ■action until, performance on the part of Fosdick was impossible, is a ^potential fact of willful negligence, destructive of any right of action he once may have had.
• It is argued with ability that notwithstanding the de■struetion of the stock, the mutuary’s risk continues, and his liability continues. That having lost the option to pay in stock his liability to pay in money remains. Council ■seem to loose sight of the fact that by the contract of the parties, the first movement in relation to payment is to come from Greene. Fosdick may safely lie still in the matter until spoken to by Greene in relation to the payment. By no principle of the law does the fact, as claimed by plaintiff, that the stock was valueless or had become extinct by the sale of the road, enlarge his rights; but, on the contrary, such negligence as his in the matter was fatal to his •cause of action.
The court is not authorized to make a better case for the plaintiff' than he made for himself. The parties may know ■that no such stock could be had in 1868. But the plaintiff failing to make a demand for the stock is in no situation to legally require Fosdick to return the stock. For any •thing we know, from the facts disclosed in this case, Fosdick may now be in possession of the identical stock he borrowed from Greene in 1856-7.
If demand had been made or circumstances existed that would avoid the necessity of a demand, what would be the •measure of damages?
The decisions in the states on this question are not uniform. In some it has been held, where a note is payable in specific articles, bank notes, stocks or scrip, at a stipulated price, the party may recover, upon a breach of the ■contract, the sum named in the contract, and will not be remitted to the market value on .the day of payment. In other states the reverse of this is held to be the true rule.
In this case, had demand been made, or if the facts and *495 ■circumstances of the case rendered a demand unnecessary, Eosdick would be required to pay Greene so many shares of stock, or dollars counted on the face of the stock, as when estimated at par, would be two hundred and twenty shares of old stock, or $11,000 with the accruing interest, payable in money or stock according as the original issue of stock required. This, we think, was the meaning of the parties and the sense of the contract. This would have satisfied the loan, whether the stock was, in the market, above or below par.
"When, by its terms, a contract is to be paid in the notes of a particular bank, stock, or scrip in the similitude of bank notes, the market value of the bank notes, stock, or scrip, at the time they are required to be paid, is the measure of damages. And a sufficient reason for the rule is that, when a party engages to pay so many dollars in bank notes, stock, or scrip, the articles described are numerically •calculated by the numbers they express on their face, so that the sum of money named in the railroad stock is understood to mean that amount as expressed on the face of the stock certificate, and not an amount that will be equivalent to that number of cash dollars. $11,000 in the stock of the Marietta and Cincinnati Railroad Company does not mean $11,000 in money, but $11,000 as expressed on the face of the stock, the nominal sum of that much interest in the franchises of the company. An instrument drawn for so many dollars, payable in wheat or other commodity, means so much of the article named, as will, in the market, amount to the sum of the dollars* named in the contract. And this is so, because the things themselves can not be •counted by dollars, since the name of dollars is never applied to them. 10 Ind. 20; 1 Blackf. 346; 2 S. & M. 485; 7 Humph. 33; 3 Littell, 246.
The case of Wm. Robinson, Jr. v. Wm. Noble’s Adm’r, 8 Pet. 181, decided by Judge McLean, gives the true rule for the measure of damages. Noble, by a written agreement, was to transport, on a steamboat, certain stores to St. Louis, the agreed price for the transportation to be paid, one-half *496 at St. Louis and one-half at Cincinnati, in paper of banks current there at the time of the delivery of the stores at St. Louis. To the written agreement was attached a memorandum in writing, as follows : “ It is understood' that the payment to be made in Cincinnati is to be in the paper of the Miami Exporting Company, or its equivalent.” On the trial, the defendant asked the court to charge the jury that the plaintiff could not recover more than the actual value of the paper of the Miami Exporting Company at the time it became due, according to the scale of depreciation. The court refused to give this, but did instruct the jury that the true measure of damages was the numerical value of the paper of the Miami Exporting Company, in specie with interest. When disposing of the case, on error, Judge McLean says: “ The express provisions of the contract, show that the payment at Cincinnati was not to have been made in specie. The notes of the Miami Exporting Company were substituted by the parties as the standard of value which shall discharge this part of the agreement; and the payment of these notes, or any others of equal value, was all that Noble had the right to demand. But it is contended that, as the payment was not made at the day, it must needs be made in specie, and to the full amount of the sum agreed to be paid in depreciated paper. . . . The notes of the Miami Exporting Company purported to-be money, and may, to some extent, at the time, have circulated as such in business transactions ; but it is manifest they were not considered as money by the parties to this contract, but as a commodity, the value of which is to be ascertained by the amount of specie it will bring in the-market. . . . Had these notes been equal to specie, on the day of the payment, Lobinsón was bound to pay them, or what was of equal value. If they had depreciated tc fifty cents on the dollar, Noble was bound to receive them in discharge of the covenant. Each party incurred a risk in the fluctuation of the value of the notes specified. . . . Robinson can only be held liable to make good the damages sustained through his default; and the specie value- *497 of the notes, at the time they should have been made, is the rule by which such damages are to be estimated.” 2 Addison on Contracts, 473.
We conclude: Railroad stock loaned to be returned on demand is in the nature of a mutuum, and is governed by like legal principles, so far as they apply to the facts of the case. The solvency or insolvency of the company, and worthlessness of the company’s stock, when caused by no-agency of the borrower, neither increases nor diminishes the rights or liabilities of the parties, in respect to the stock, under the contract. When the lender has been so-far guilty of negligence that he has seen the road company become insolvent, its rights and property publicly sold under decrees of court, the company become extinct and its stock of no intrinsic value, without asserting any of his legal rights, he loses his right of, action against the borrower, both as to return of stock and pecuniary damages. When, by the terms of the agreement, the stock is to be returned on demand, no right of action accrues-until demand is made. And when such cause of action does accrue, the measure of damages is the value of the-stock at the time the cause of action accrued.
Judgment of Superior Court in general term reversed,, and also judgment at special term reversed, and cause remanded for further proceedings.
Scott, Chief Judge, Day, Weight, and Johnson, JJ.,. concurred.