WALTON WHITAKER, plaintiff in error, *vs.* JAMES A. DYE, defendant in error.

A promise to pay in currency by a future day, a sum equal to the value of a given amount of currency at the date of the promise, is to be discharged, after maturity, with no less currency than at maturity. Such a contract gives to the debtor the benefit of appreciation up to the expiration of the credit, but not of that which occurs after default in payment.

Promissory notes. Contracts. Before Judge BUCHANAN. Troup Superior Court. November Adjourned Term, 1874.

Reported in the opinion.

W. O. TUGGLE, by ALBERT H. COX, for plaintiff in error.

FERRELL & LONGLEY, for defendant.

BLECKLEY, Judge.

When the contract was made gold was $1 38; when it became due, it was $1 20¼; it was the same at the date of the first credit, and at the date of the second credit it was $1 09. At the time of the trial (December 10th, 1874,) it was $1 11¼. The instrument declared upon was as follows:

"$3,530 00. By the 25th December, 1869, I promise to pay M. P. Dye or bearer, thirty-five hundred and thirty dollars, for value received. This note has the following condition: the subscriber agrees to pay at the maturity of this note, in the currency then in circulation, an amount equivalent to the aforesaid amount of the currency now in circulation, as it is valued at the date hereof. This October 12th, 1868.

(Signed) " WALTER WHITAKER."

Indorsed upon the same were these entries:

"On the 12th of October, 1868, gold was quoted in New York, at $1 38 and the gold value of this note would have been $2,558 70. Received on within note one thousand dollars in currency, which is worth in gold, according to New York quotations, $1 20¼, which is $831 60 in gold, December 29th, 1869.

"Received on within note nine hundred dollars in currency, April 28th, 1871."

The court below was called upon to construe the contract with no aid from extrinsic testimony, and to give the jury a rule for calculating the amount for which the verdict should be rendered, the value of gold as compared with currency being as above set forth.

The plaintiff contended that the amount of currency which the defendant undertook to pay became fixed and certain when the contract matured, and that subsequent appreciation did not reduce the debt to any less amount. He arrived at the sum thus: $3,530 00 in currency at the date of contract, when gold was $1 38, equaled $2,558 70 gold; and this, at

date of maturity, when gold was $1 20¼, equaled $3,134 40 currency. The contract being an agreement to pay *currency,* this last sum was what should have been paid on the day of maturity, and was therefore the real amount of the debt.

On the other hand, the defendant contended that the value, and not the amount of currency, was the substantial matter in the contemplation of the parties. What the creditor was to receive was the equivalent of $3,530 00 currency at the date of the contract, which reduced to gold, the ordinary standard of value, was $2,558 70. This sum in gold was the real debt, and so remained. It was the debt at the date of the contract, at the time of maturity, and, (with the gold value of the two credits deducted, and interest added,) at the time of the trial. As tending to confirm this theory of the case, the defendant insisted that the parties themselves had recognized it and acted upon it in entering the first credit, since, in that entry, they recorded the gold value of the note and the gold equivalent of the credit.

At the date of the contract and down to the time of trial, one species of currency was a legal tender ; and we know by the public history of the country, and there is no evidence to the contrary in the record, that the whole mass of currency in circulation was at par with it. Under these circumstances, a promise to pay "in currency in circulation," may be considered, in its ultimate analysis, a promise to pay in the currency tender, as distinguished from the specie tender. As there was a mixed currency of equal commercial value in circulation when the debt matured, some of which was money, and some not money, the most favorable view that can be taken for the debtor is, that when he failed to exercise his privilege of paying in that which was not money, the debt at once became payable absolutely in that which was money. If he was not bound at first to pay legal tender currency to the exclusion of the other, he became so bound on the day of maturity by his failure to pay any.

On breach of a contract to pay currency, the measure of recovery is, generally, the value of the currency at the time

of the breach, with interest added: 8 Peters, 181; 12 Ill., 184; 3 Litt., 245; 2 S. & M., 485. How ought this rule to be applied when the recovery is not to be in gold or silver, but in some of that very currency which ought to have been paid? Should the value be estimated in one kind of money and the judgment go for another kind, or should the measure of the recovery and the recovery itself be in the same medium? If this were a gold contract, the judgment should be for gold: 7 Wall., 229; 12 *Ibid.*, 687. But it is a currency contract, and whatever advantages belong to it, as such, ought to be preserved. In dealing with it, the value of gold was involved to find out how much currency was due, but for that purpose only. When the translation into currency was once made, the medium was reached in which, according to the contract, the debt was to be paid, and in which, according to the law, the judgment might be rendered. Should there be a retranslation into gold for the purpose of adjusting the recovery in currency to the damages sustained by not paying the like currency? Treating currency as represented by that part of it which may be used as legal tender, is not the difference between realizing it earlier or later, simply the lawful interest; no more and no less? We shall so hold in the present case, and affirm the judgment.