JACOB DOLD PACKING COMPANY, Respondent, *v.* KINGS COUNTY REFRIGERATING COMPANY, Appellant.

Second Department, January 19, 1917.

Contract — agreement to furnish refrigeration for estimated cold storage space — erection of plant containing greater cubic contents — practical construction of contract by parties — injunction restraining defendant from cutting off refrigeration — corporation operating under public franchise — renewal privilege construed — reference — determination as to defects of cold storage plant.

Where a contract between the plaintiff, a cold storage company, and the defendant company, supplying refrigeration under a public franchise to lay pipes in the public streets, which was entered into before the plaintiff's storage plant was constructed, required the defendant to furnish refrigeration for cold storage compartments of "*about* 26,946 cubic feet" for the period of five years, and the defendant for that period

actually furnished refrigeration for a cubic contents of storage, which was about eight and one-half per cent greater than that estimated in the original contract, at the agreed price and without objection, it cannot afterwards on the expiration of the period charge the plaintiff with the value of the refrigeration for an additional space. Such defendant will be enjoined from cutting off the refrigeration because of the plaintiff's failure to pay the increased charge. This because the variation in the area of the plaintiff's plant was covered by the word "about," and also because the parties had given a practical construction to their mutual rights for a period of five years.

Where the contract, in addition, provided that it was to continue in force after the expiration of the five years "until either party have given 30 days' notice in writing of a desire to terminate same," the plaintiff was not required to give prior notice of a renewal of the contract, but renewed the same by continuing to use the defendant's refrigeration and making payments therefor.

Moreover, construing the contract against the defendant which drew it, the right to terminate on giving thirty days' notice did not apply during such five years' extension.

As the defendant operated under a public franchise its duties were of a semi-public nature and an injunction may issue to restrain it from cuting off refrigeration from the plaintiff's plant.

Where, however, the defendant complains that the insulation of the plaintiff's cold storage compartments has become defective and there is conflicting evidence on this question, it is proper to refer the issue so that there may be a more critical investigation than can be had at trial.

The said defects in insulation are not sufficient to work a forfeiture of plaintiff's contract rights, especially where the defendant's inspectors had daily access to plaintiff's plant and had it under constant observation.

Appeal by the defendant, Kings County Refrigerating Company, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 19th day of January, 1916, upon the decision of the court after a trial at the Kings County Special Term.

The judgment enjoined defendant from discontinuing refrigeration to the plaintiff, and appointed a referee to take proof.

On May 16, 1910, the defendant contracted to supply refrigeration, through a system of pipes, to plaintiff's cold storage "boxes" or compartments of "about 26,946 cubic feet," then under construction, which plaintiff was to maintain for its packing house at Metz street, Brooklyn. This was for the term

of five years from June 1, 1910, with privilege of a further renewal five-year term.   The agreement contained the further clause: " This contract is to continue in force after the expiration of the time above mentioned, until either party have given 30 days' notice in writing of a desire to terminate same." There were also clauses and conditions set forth on the back of this instrument.

At this time defendant held a franchise granted by the board of estimate in 1907.   This first franchise (the terms of which are not in evidence) was surrendered in 1914 and a new franchise granted which is still in force.   By it defendant was authorized to construct, maintain and operate certain pipes and conduits with the necessary branches and extensions therefrom leading directly into private property and into property of the city in Wallabout Market for the sole purpose of supplying refrigeration to consumers.   Defendant's pipes are permitted to be operated beneath the Brooklyn streets, avenues and highways included in two districts which are defined by a map accompanying its petition to the board of estimate and apportionment dated July 25, 1914.

Plaintiff's cold storage compartments take several floors of a building fifty feet front and one hundred and ten feet deep. There are now five compartments in all, divided by solid partitions.    The large box or cooler on the main floor was fifty-five feet by thirty feet and eight feet high; above that, on second floor, a cooler fifty-five feet by twenty feet, seven feet high, then a third cooler fifty-five feet by seventeen feet by seven feet, which is called a " pickle cooler " to cure meats.   In this was later installed a smaller apartment called a " freezer, " seventeen feet by seven feet by seven feet.

This subdivision of the plaintiff's building had not actually been made at the time of this contract.   But on its final completion the total contents measured 29,244 cubic feet, being 2,298 cubic feet (about eight and a half per cent) above the contract estimate of 26,946 feet.

About a year and a half later another cooler was built on the third floor, which is called cooler No. 4, which is refrigerated under a separate contract at a rate of twenty-nine dollars and seventeen cents, which is not in dispute here.

In 1914 defendant seems to have planned to use brine instead of ammonia. After June 1, 1915, plaintiff continued its payments. In July defendant found fault with the insulation inside of plaintiff's boxes. Some letters then passed. On September 7, 1915, defendant wrote plaintiff that it would stop its refrigeration on October first because of poor insulation, and "also for other good and sufficient reasons." Bills were inclosed for separate refrigeration of the "freezer," running back in 1910, $1,072.06, also for the additional cubic feet for $388.05, and for $153.30 for September refrigeration. On September tenth defendant returned plaintiff's check for $129.17, offered for September refrigeration, because said check said "in full." On September tenth plaintiff formally wrote defendant that it had continued the contract for five years from June 1, 1915, in exercise of its privilege. On September fourteenth defendant wrote plaintiff correcting its earlier letter of September seventh, to the effect that it would discontinue plaintiff's refrigeration on October seventh on four specified grounds: (1) Bad insulation of plaintiff's boxes; (2) interference with valves of its pipes by plaintiff's employees; (3) for refrigerating more than the contract figure of 26,946 cubic feet; (4) for not renewing the contract of May 16, 1910. Defendant also claimed a right to terminate on giving thirty days' notice, to expire October seventh. On October sixth, the day before this threatened stoppage, plaintiff obtained this temporary injunction, which was made permanent at the trial.

The learned trial justice found that the term "about 26,946 cubic feet" covered the actual cubic capacity, although it turned out to be 29,244 cubic feet; that, hence, defendant could not lawfully require extra compensation for such excess. He held also that the cork insulation had not been properly renewed, or had not been kept in repair and needed overhauling. The court sent to a referee to take testimony and ascertain and report what would be needed to put the refrigeration in proper condition.

*Dallas Flannagan,* for the appellant.

*James B. Curtis* [*Ernest E. Baldwin* with him on the brief], for the respondent.

PUTNAM, J.:

The learned argument for appellant ignores the weighty, indeed controlling, effect of the practical construction of the mutual rights under this contract, as made, acquiesced in and settled during the five years of defendant's service. The interior compartment styled a "freezer" carried a lower temperature. But, being surrounded by refrigerated space, apparently a temperature for this small chamber of twenty degrees was not difficult to maintain. Certainly a demand for extra compensation first hinted at in 1915 ignored what had been settled and lived under by the parties during four years.

There was still less basis in the claim for 2,298 cubic feet increased cubic capacity of the meat boxes. In charter-parties of vessels, the expression "thereabouts" as to tonnage or cargo capacity covers variations of ten per cent. (*Watts* v. *Camors*, 115 U. S. 353; *Ashburner* v. *Balchen*, 7 N. Y. 262. See, also, *Robinson* v. *Noble's Administrators*, 8 Pet. 181. See, also, 1 Corp. Juris. title "About," p. 335, § 3.) Being before completion, the cubic feet here given were merely an estimate of what was expected. If the actual variation turned out to be too great such discovery should be announced before waiting five years.

The privilege to renew the contract for refrigeration for five years, extending from June 1, 1915, was not made dependent on any prior notice. It was sufficiently exercised by continuing the use of defendant's refrigeration and making payments therefor. (*Kelly* v. *Varnes*, 52 App. Div. 100.) Construing the contract against the defendant who drew it we must hold that the right to terminate on giving thirty days' notice did not apply during such a five-year extension.

Defendant's public franchise to supply refrigeration, involving a right to lay its pipes in the public streets, carried with it duties of a semi-public nature. It was not an ordinary contract. The interests involved had become such that, acting on its own view of its rights, defendant could not summarily cut off its pipes and discontinue refrigeration, to the damage and possible destruction of plaintiff's packing products. Therefore, it was rightfully enjoined. (*Lane* v. *Newdigate*, 10 Ves. Jr. 192; *McEntee* v. *Kingston Water Co.*, 165 N. Y. 27; High Inj. [4th ed.] § 1122a; Pom. Eq. Rem. § 298.)

Second Department, January, 1917.          [Vol. 176.

Every one of the four grounds stated in its notice of September fourteenth failed except the matter of defects in plaintiff's insulation. The state of the conflicting evidence as to the need to overhaul floors, ceiling and other installation within the meat boxes, called for more critical investigation than could be had at the trial, so that this question was properly referred. The fact that defendant's inspectors were in these chambers daily, having them under constant observation, justified the learned court in not holding such wear, defects in walls, or the wet flooring, sufficient reasons to forfeit this contract. The second finding of fact should be amended so as to state the particulars of defendant's public franchise.

I advise that the interlocutory judgment be affirmed, with costs.

JENKS, P. J., THOMAS and STAPLETON, JJ., concurred; CARR, J., not voting.

Interlocutory judgment affirmed, with costs.