CUNNINGHAM v. CAUTHEN.

1. ADMINISTRATION—SPECIE—PREMIUM.—The rule that prohibits a trustee from making profit to himself out of the trust estate in his hands, does not require an administrator, by reason of his receipt of specie at a time when

it was almost the only circulating medium in the State, to account in currency, now at par with specie, for the premium which specie commanded over paper currency at the date of its receipt.

2. IBID.—IBID.—IBID.—An administrator is not chargeable with the premium which specie, left by the intestate, commanded at the time of its receipt by the administrator, there being no proof that he had realized a premium by an exchange of this specie for paper money. He was not bound to make such exchange, and it will not be presumed.

3. IBID.—IBID.—IBID.—An administrator is not chargeable with the premium on sale notes taken by him payable "in gold or its equivalent," except to the extent that he is shown to have actually received a premium on gold in payment.

4. IBID.—PURCHASE AT HIS OWN SALE.—Where an administrator bid off in his own name cotton of his intestate at the estate sale, and resold it at a greater price, charging himself in his sale bill with such greater price, which was the highest market value, it was a purchase by the administrator, such as the statute allows, notwithstanding the fact that he took notes on the resale payable to himself as administrator, and sometimes spoke of a tract of land acquired by him in his own name under the foreclosure of a mortgage given to secure one of these notes, as estate property. The distributees have no other right than to require the administrator to account for the value of the cotton as charged on the sale bill, and have no claim on the tract of land so purchased by the administrator.

5. FINDINGS OF FACT by a referee, concurred in by the Circuit Judge, sustained, not being contrary to the weight of the testimony.

6. EXCEPTIONS overruled because too general, referring back to exceptions taken to a referee's report, and argumentative, raising no particular points.

7. AN ADMINISTRATOR'S RETURNS to the Probate Court, made many years before, are *prima facie* evidence, after his death, of the credits claimed, if it appears on the face of the returns for what purposes of the estate the payments were made.

8. STATEMENT OF ACCOUNTS.—The mode adopted by the referee in stating the account of an administrator with the estate, and with the several distributees of the estate for advances, approved.

9. AN EXCEPTION upon a point not ruled upon on Circuit not considered, but left open for determination on the recommittal of the cause.

10. FINDINGS OF FACT by the Circuit Judge, overruling the referee, sustained.

11. ADMINISTRATOR—ASSETS—CREDITS.—An administrator should not be allowed credit in his accounting for notes not shown by him to have been the property of the estate, or sufficiently secured, or uncollected, or not collectible by the exercise of proper diligence.

12. FINDINGS OF FACT by referee, concurred in by Circuit Judge, as to the several items in a long accounting, sustained.

13. IBID.—UNCOLLECTED NOTES.—Credit allowed by referee and Circuit Judge

to an administrator for notes uncollected in the years just after the war, approved.

14. ALLOWANCES—ADMINISTRATOR allowed credit for expenditures made under a contract to secure a teacher for the distributees of his intestate's estate, he having no children of his own.

15. COSTS—RECOMMITTAL.—Decree as to costs reversed without prejudice, as the case has to go back for a restatement of the account.

Before WITHERSPOON, J., Lancaster, October, 1890.

Action by William J. Cunningham and others, distributees of the estate of Joseph A. Cunningham, deceased, against Lewis J. Cauthen, administrator of Andrew J. Kibler, who had been administrator of the said Joseph A. Cunningham, commenced August 17, 1883. The Circuit decree, omitting its findings upon pure questions of fact affecting only items in the accounting, was as follows:

All of the issues in the above entitled action were referred to D. A. Williams, Esq., as special referee, who filed his report August 29, 1890. The cause was heard upon numerous exceptions to said report by both plaintiff and defendant.

It appears that Joseph A. Cunningham, a planter, residing a few miles from Lancaster Court House, died intestate December 11th, 1865, and that soon thereafter Andrew J. Kibler administered upon his estate. At the time of his death, Joseph A. Cunningham left, as his heirs at law and distributees, six minor children, whose mother had predeceased their father. This action was originally instituted in August, 1883, by the heirs at law against Andrew J. Kibler for an account of his administration of his intestate's estate. Pending this reference, and before he had been fully examined before the referee, Andrew J. Kibler died intestate, and the action was continued against his administrator, the defendant, Lewis J. Cauthen.

On 13 December, 1865, the ordinary granted an order, authorizing Andrew J. Kibler, as administrator, to sell the cotton to the highest bidder, in some convenient cotton market, in the usual way of disposing of such property, and that he offer for sale, and dispose of, at public auction to the highest bidder, the remainder of the surplus property, on the third day of Jan-

uary, 1866, on the following terms, to wit: for the provisions, cash (except the molasses), balance on credit until 1st January, 1867, with interest from date, purchaser to give note and good security. Andrew J. Kibler lived at the homestead and cultivated the land during the year 1867 and 1868. On the 3d and 4th of January, 1866, the administrator sold personal property upon the premises, including some fifty-eight bales of cotton at twenty-four cents per pound, that being the highest bid, and soon thereafter sold the cotton to different persons at twenty-eight cents per pound, charging himself in the sale bill with cotton at twenty-eight cents per pound, and amounting to $6,899.40. The intestate left on hand at his death $1,360.50 in gold, $48.45 in silver, and $98.45 in currency.

The sale bill, including the cotton, amounted to $9,428.15. In the first return, the administrator charged himself with the sale bill ($9,428.15), and also with the cash on hand at intestate's death. The referee has charged the administrator with a premium of 40 per cent. (value of gold) on the sale bill of $9,428.15, as well as upon the $1,608.95 of specie on hand at intestate's death. He has allowed the administrator credit for the same rate of premium upon all payments which appear in specie, during the period that gold or specie was at a premium, including the sale notes, for which the administrator has been allowed credit. Exhibit A of the report shows the general account of the administrator, with a statement of the reasons for disallowing the administrator credit for certain items. Exhibit B gives the reasons that influenced the referee in disallowing credit for certain payments, alleged to have been made by the administrator. Exhibits C, D, E, F, and G, represent the account of the administrator with each of the distributees, with statements of the reasons for not allowing the administrator credit for certain charges against the respective distributees. The referee reports the aggregate amount due by the administrator, August 1, 1890, to the five distributees, to be $16,511.11.

The defendant's exceptions will be first considered. It is alleged that the referee erred in not finding certain facts, to wit: That Kibler was a half brother of the intestate; that he declined other lucrative employment to administer upon intes-

tate's estate, and take charge of the minor children, at the instance of the near relations of the children; that he was kind to the children, supplied their wants, and gave them a liberal education; that his administration was attended by the peculiar difficulties incident to the results of the war. These facts do appear, but I cannot say that the referee erred in failing to state them in his report.

The referee's report is quite elaborate, and clearly states in detail all matters relevant to the issue referred to the referee. In this connection, it is proper to state that I am satisfied that the administrator acted in good faith in bidding off the cotton at the sale. The fact that the administrator charged himself with the increased price for which he sold the cotton, is the highest and best evidence of good faith. I am also satisfied that the administrator charged himself with the cotton at its highest market value. The defendant excepts upon the ground that the referee erred in charging the administrator with forty per cent. premium on the sale bill of January 3d and 4th, 1866, as well as upon the specie on hand at intestate's death.

The order for sale did not direct the currency in which purchasers at the sale were to pay for the property. The administrator testifies that the cotton was sold for cash, payable in gold and silver coin; that he collected a premium on gold on the sale notes. W. R. Marshall testifies that he heard the announcement of the terms of sale, and it was for gold; that he paid the administrator a premium of forty per cent. on sale notes. Under the order of sale, it was the duty of the administrator to collect the sale notes at their maturity, January 1, 1867, or show sufficient reasons why said notes were not collected at maturity.

It is conceded that the intestate's property was sold for gold, but it is contended: 1st. That it is to be presumed that the payments by the administrator were made in gold. 2d. That the administrator can now discharge his liability to the distributees, by paying in gold at its depreciated value. The administrator's returns and vouchers only show that specie was paid in a few instances, when the referee has allowed credit for the same premium charged against the administrator. Even if

such a presumption could arise in favor of a trustee, who has been called upon to account, I fail to see how it can be invoked in this case, in the face of the facts admitted and proven, that the administrator has collected a premium of forty per cent. upon sale notes, for which he has not charged himself. According to the evidence, when the administrator sold intestate's property, and upon the 1st of January, 1867, when the sale notes matured, gold was at a premium of forty per cent. Gold has depreciated to the value of currency, and it would be inequitable to the distributees to allow the administrator to account for the gold at its depreciated value, unless it is made to appear that the gold which the administrator received was used for the payment of the debts of the estate, or that it was held by the administrator for estate purposes until it depreciated. This has not been done. See *ex parte Glenn*, 20 S. C., page 67. I conclude that the administrator was properly charged with the premium on the sale and on the specie on hand, and the defendant's exceptions on this point must be overruled.

The defendant alleges that the referee erred in not allowing the administrator credit for money deposited in the Bank of Mecklenburg, N. C. To sustain this credit, three certificates were produced, issued by the Bank of Mecklenburg, at Charlotte, N. C., payable to A. J. Kibler individually, for $1,189.50 in gold, $40.44 in silver, and $371.77 in currency, and bearing interest at eight per cent. The bank failed on the 4th of August, 1875, and on November 1, 1878, A. J. Kibler individually receipted on each of said certificates for a dividend paid by the bank. He does not refer to said deposits in his returns, and does not charge himself with the dividend received. There were endorsements, without date, on the certificates, in the handwriting of Kibler, that the money belonged to the estate of Cunningham, and his testimony to this effect, when called upon to account, is inconsistent with his conduct. Assuming that the bank was in good financial standing, and that there was no impropriety in the administrator depositing the money in a bank at Charlotte, N. C., upon the evidence, I fail to see how the referee could allow the credit. The defendant's ex-

ceptions in relation to the deposit in the Bank of Mecklenburg, N. C., are overruled.

The testimony of William J. Cunningham and Thornwell K. Cunningham, taken after the death of Kibler, as to transactions and communications between said plaintiffs and Kibler, is obnoxious to sec. 400 of the Code, and should have been excluded by the referee. I do not think that the referee erred in permitting plaintiffs to introduce testimony after the death of Kibler, as alleged in defendant's exceptions. * * *

The defendant's 17th, 18th, and 19th exceptions allege that the referee erred in not allowing the administrator credit for a number of items therein referred to, and in charging the administrator with the tax on certain cotton. It is urged that the administrator's returns furnish *prima facie* evidence as to the propriety of payments made by the administrator. I think this is the correct view, where it appears upon the face of the returns for what purpose the estate money was expended. But when the face of the returns do not definitely show that the expenditure was for estate purposes, I do not think it would carry such a presumption. In *Wright* v. *Wright*, 2 McCord Ch., page 197, it is held that the settlement with the ordinary is intended as security for the executor as well as for the distributees, and after a lapse of sixteen years, ought to be a complete protection, unless impeached by the distributees. As Andrew J. Kibler died pending the reference, he should be entitled to the protection of the rule laid down in the case of *Wright* v. *Wright*. The administrator filed his returns, April 30, 1866; July 27, 1867; September 5, 1868; October 17, 1870; November 1, 1872; February 1, 1876; June 5, 1879; January 21, 1881, and March 10th, 1882.

The referee could not consistently find that the McIlwain land belonged to Kibler, and charge his intestate's estate with the fees and costs incident to the recovery of the land, as claimed by the defendant. * * *

It appears that the estate cotton was being guarded in December, 1865, that John Crockett was a laborer, and I am satisfied that the administrator resisted in good faith the claim of Croxton for tuition. To the extent of the items above set

17—37

forth, the defendant's seventeenth exception is sustained. I do not think the evidence is sufficient to sustain the other credit claimed in said exception. The defendant's seventeenth exception is overruled, except as to the items in said exception above specified and set forth. * * *

I fail to discern any ground upon which the administrator should have been credited with the $40.25 referred to in defendant's twenty-eighth exception, and the same must be overruled. The administrator did not make annual returns, and under the act of 1789, then in force, the administrator is not entitled to commissions on money received and paid out during the year 1871. The referee has allowed the administrator credit for commissions on interest charged for each year. The twenty-eighth and twenty-ninth exceptions are overruled. It is admitted that the referee had inadvertently omitted to allow the administrator credit for the commissions on the amount reported to be due the distributees, William J. Cunningham and Beauregard Cunningham, and the defendant's thirty-first and thirty-second exceptions are sustained.

The defendant's other exceptions allege that the referee has erred in stating the accounts and in calculating the interest charged against the administrator. The referee has carefully avoided compounding the interest with which the administrator has been charged, and it seems to me that the accounts are stated according to the rule laid down by our courts. The defendant's thirty-fourth, thirty-fifth, and thirty-sixth exceptions are overruled. * * *

Plaintiffs' 8th, 9th, 10th, and 11th exceptions allege that the referee erred in not finding that plaintiffs are entitled to the McIlwain land, and to an account for rents and profits. It appears that Kibler sold to J. D. McIlwain some fifteen bales of the cotton purchased at the sale of his intestate's property, and took McIlwain's notes and mortgages, to secure the purchase money payable to himself (administrator estate J. A. Cunningham) in gold and silver coin, or its equivalent in currency. Under a judgment of foreclosure against McIlwain, the land was sold in December, 1867, and purchased by Andrew J. Kibler, who took title to the land in his individual name.

The plaintiffs allege in their complaint that Andrew J. Kibler held the title to the McIlwain land as trustee for plaintiffs. The referee held that the title to the McIlwain land was in Andrew J. Kibler individually, and that he did not hold said title in trust for the plaintiffs as heirs at law and distributees of the estate of Joseph A. Cunningham. Upon the death of Andrew J. Kibler, the title to the McIlwain land passed to his heirs at law, who are not parties to this action. There can be no final determination of the controversy as to the McIlwain land under the pleadings, and the exceptions to the referee's report have been considered as if no issues had been made as to the McIlwain land. No objection has been made upon the ground that the heirs at law of Andrew J. Kibler have not been made parties, but they are necessary parties, and would not be bound by any adjudication with reference to the McIlwain land under the present pleading.

Plaintiffs' main cause of action is to require Andrew Kibler to account for his administration of his intestate's estate. Upon the death of Kibler, pending said action, his administrator was the only necessary or proper party to said accounting. The allegation in the complaint as to the McIlwain land is a separate and distinct cause of action, involving the title to land of which Kibler was seized and possessed at the time of his death, and the heirs at law of Kibler are the only necessary or proper parties defendant to said cause of action. Under section 188 of the Code, plaintiffs may unite separate and distinct causes of action in the same complaint, but they must affect all the parties to the action, except in action for the foreclosure of mortgages. The defendant, Lewis J. Cauthen, as administrator of Andrew J. Kibler, is not affected by the issues as to the McIlwain land, nor are the heirs at law of Andrew J. Kibler affected by the cause of action against Lewis J. Cauthen, administrator in the same, contemplated in section 188 of the Code.

But assuming that the two causes of action are properly united in the complaint, it has been more than four years since Andrew J. Kibler died pending this action, there has been no motion to amend the pleadings by making the heirs at law of

Kibler parties to this action, the testimony is voluminous, the cause has been heard upon numerous exceptions to the elaborate report filed by the referee, and it seems to me to be too late now for the plaintiffs to ask for an amendment which may require a restatement by the referee of the administrator's accounts from January, 1866, up to 1883. I will not, therefore, order the amendment of the pleadings, so as to make the heirs at law of Andrew J. Kibler parties, but will leave the issues as to the McIlwain land open, and the plaintiffs can take such proceedings as to the McIlwain land as they may be advised.

The plaintiffs' 13th and 14th exceptions allege that the referee erred in not charging the administrator with $234.03 of interest in excess of seven per cent. received by the administrator. The administrator admitted that in some instances he received interest far in excess of the rate of seven per cent., but the referee states that he is unable to find from testimony that the administrator received more than seven per cent., with which he is charged upon the estate funds, which came into his hands. I do not think that the referee erred in not charging the administrator with interest in excess of seven per cent., and the plaintiffs' thirteenth and fourteenth exceptions are overruled.

It is ordered and adjudged, that the referee's report in this case, filed August 29, 1890, be confirmed and made the judgment of this court, except as herein modified or overruled. It is further ordered, that the report be referred back to the referee, D. A. Williams, Esq., to restate the accounts of Andrew J. Kibler, administrator, so as to conform to this decree. It is further ordered, that the costs of this action be paid by the estate of Andrew J. Kibler.

Both parties appealed on exceptions, sufficiently stated in the opinion.

*Messrs. Ernest Moore* and *M. J. Hough,* for plaintiffs.

*Messrs. R. E. & R. B. Allison* and *R. W. Shand* (who also read arguments of *Giles J. Patterson,* deceased, and *Charles A. O'Neil*), contra.

September 17, 1892.   The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.   Joseph A. Cunningham died intestate, in December, 1865, seized and possessed of considerable real and personal estate, leaving surviving heirs and distributees as follows: Mary C., a daughter (who married Robert T. Dunlap, and died in 1868, leaving as her heirs her husband and one son, Joseph A. Dunlap, of whose person and estate his father, Robert T. Dunlap, is guardian), Rebecca, another daughter (who never married, but died in 1867, leaving her brothers and sisters as her heirs), Nannie C. (who intermarried with Leon C. Vanlandingham), and three sons, William J., Thornwell K., and Beauregard Cunningham.   Soon after the death of the intestate, Andrew J. Kibler, his half-brother, was appointed administrator of the estate, and entered upon the discharge of his duties as such.   The war had just closed, and the administration involved some novel and difficult questions, while the tendency to confusion was increased by the fact that the six distributees were all minors, whose mother had died before their father, and who, when not absent at school, lived with the administrator, their kinsman, or some other relatives. For some time they had no guardians, and had to be provided for by the administrator, which made it necessary for him not only to keep the account of the general estate, but also special accounts with each of the distributees, for advances made to them from time to time for various purposes and in different amounts.

After the children reached their majority, in August, 1883, this action was instituted by the distributees against Kibler, the administrator, for an account, charging, amongst other things, that the administrator, under proceedings to foreclose a mortgage held by him as administrator, had bid off a certain tract of land, known as the "McIlwain tract," with funds of the estate, and for the benefit of the estate, and held the legal title for the distributees; but has failed and refused to account for the rents and profits thereof received by him for their benefit, and has refused to convey the said tract of land to the distributees.   Also, that a considerable amount of cotton, and

other personal property (including gold and silver), went into
the hands of the administrator; that the said personal property
of the estate was sold on a gold basis, and the notes taken
therefor collected in currency, with the premium of forty per
cent. on gold added, but the administrator failed to charge
himself with the premium so received, as he should have done,
and in various other matters had failed to make a just and true
accounting.

The defendant made answer in 1883, but afterwards filed an
amended answer, which was substantially a general denial, and
alleged that he had not only fully and fairly administered the
estate, but had paid to the plaintiffs large sums in excess of the
amount to which they were really entitled. And these alleged
over-payments were set up as counter claims and judgments
demanded against the several plaintiffs for the same. The
plaintiffs in reply denied every allegation of the amended
answer as to the counter claims, &c. The issues were referred
to D. A. Williams, Esq., as special referee, before whom the
administrator was ordered to account for the administration of
the estate; but he refused to take the initiative in stating the
account, and the plaintiffs were required to assume the burden
of charging the administrator. The testimony was very volu-
minous, covering at least two hundred pages of printed matter,
marked "Appendix" in the brief. After the plaintiffs rested
their case, the administrator was sworn as a witness, and his
testimony taken down in writing and signed. Soon after, in
June, 1886, he died intestate, and letters of administration upon
his estate having been granted to Lewis J. Cauthen, he was sub-
stituted for the original administrator as defendant in the case.

The report of the referee is very long, embracing a full ac-
count of the general estate, and also separate accounts with
each of the distributees, as to partial advancements which had
been made to them as needed from time to time. The whole
report, of course, can not be restated here, but for reference
it is printed in the brief. Both parties filed numerous excep-
tions, which were heard by his honor, Judge Witherspoon,
and from his decree, confirming the report in some particulars,
and recommitting it with instructions as to others, both parties

now appeal to this court—the plaintiff on fifteen principal exceptions, and in addition more than thrice that number of subordinate specifications, and the defendant on thirty-one principal exceptions, with many alleged omissions as to both findings of fact and errors of law. The points raised are so various and numerous that it will be impossible to consider the exceptions *seriatim,* but we will endeavor to consider the most important of them, and to classify, if possible, the alleged errors in the mere statement of the accounts, many items of which involve only inconsiderable sums.

(1) As to the premium on the gold and silver, which went into the hands of the administrator.    (See exceptions of defendant, 1, 2, 3, 4, 5, 6, 7, 8, and 9.)    The referee reports that there was on hand, at the death of the intestate, $1,608.95 in gold and silver coin; and that personal property, including fifty-eight bales of cotton, was sold by the administrator for the aggregate sum of $9,428.13, on the terms "payable in gold or its equivalent;" and that at the time of the receipt of the gold and silver on hand by the administrator, and at the time the aforesaid sales of property fell due, the said specie was at a premium of forty per cent., which said premium upon the specie and the amount of the notes is estimated and embraced in the general accounting of the estate reported by him; that, as matter of law, the administrator is chargeable with, and must account for, all moneys belonging to the estate, which came into his hands, or which should have been collected by him, with the premium on gold collected by him, or which could have been collected by him when due, and with the interest as charged in the aforesaid accounting.    In this report and recommendation of the referee, the Circuit Judge concurred, and the question now is, was that ruling error?

It certainly is fundamental, and one of the moral maxims of equity, that a trustee shall not be allowed to make profit to himself out of the estate of his *cestui que trust* in his hands; and it is equally true, as a matter of fact, that in 1866 and 1867, gold and silver possessed a paying power beyond that of the mere currency of that time; and at first view it may strike the casual observer, that an administrator

should be required to account for specie at its true value, or according to its power in making payments and in obtaining receipts. But upon careful consideration, we think, it will be found that such view is not maintainable either in reason or authority. At the close of the war, specie was the standard of value, and for a time almost the only circulating medium of exchange in this State. From very well known causes, paper currency was much depreciated. None, not even the wisest, could foresee clearly what would be the outcome in regard to the financial condition or currency of the country. But, as it happened, the depreciation turned out to be only temporary, and now national currency is convertible at par into gold or silver under the legal tender acts.

As to the specie found on hand at the death of the intestate, there was no contract whatever as to what should be done with it, except that it should be properly taken care of, and used, as the law required, in the due course of administration. There was no proof that the administrator ever exchanged the gold for greenbacks, thus realizing the premium. We do not think that he was bound to make the exchange, or that we are authorized to presume that he had done so.

As to the notes taken by the administrator for property sold, payable "in gold or its equivalent," the premium on those notes could not have been collected at law by the administrator; and if he had been obliged to sue, he could not have collected the premium in national currency. As we understand it, after some conflict of opinion, it is now settled "that if the contract is only soluble in coin, it would be improper to enter judgment for the market value of that amount of coin calculated in terms of the treasury notes; the judgment must simply be for so much gold or silver." Black on Judgments, section 132; *Bronson* v. *Rhodes*, 7 Wall., 229, and authorities in note, Curtis edition. "A promissory note, payable in gold coin, or the equivalent thereof in United States legal tender notes, is completely discharged by a payment in legal tender notes, dollar for dollar." *Killough* v. *Alford*, 32 Texas, 457; s. c. 5 Am. Rep., 249; *Chesapeake Bank* v. *Swain*, 29 Md., 483; *Wood* v. *Bullens*, 6 Allen, 518; and see *Gist* v. *Alexander*,

15 Rich., 50.   We think it was error to charge the administrator with the whole premium *en bloc;* but we think that he is properly chargeable with the premium on gold or gold notes due the estate, which it can be shown he actually received, in addition to the value of the paper, by its terms.

(2) As to the McIlwaine land.   The referee reports, that cotton belonging to the estate sold in January, 1866, was bid off in fair and open market by the administrator, Andrew J. Kibler, at the price of twenty-four cents per pound, and soon after sold by him, at private sale, to different persons, at twenty-eight cents per pound, payable in coin or its equivalent in currency; and the cotton was charged against him on the sale bill, at twenty-eight cents per pound, payable in coin or its equivalent in currency, this sum, as shown by the testimony, being the true market value at that time, and the administrator, having bid off the cotton at the estate sale, became liable to the estate for the actual value thereof; that the tract of land, known as the McIlwaine tract, sold under the foreclosure of a mortgage given by James D. McIlwaine to secure the purchase money of a lot (fifteen bales) of the cotton so purchased and resold by the administrator, was purchased by the said Andrew J. Kibler, and a deed of conveyance of said land was executed by the proper officer of the court to him, the said Andrew J. Kibler, in his own right.

Upon this state of facts the referee held that the distributees (plaintiffs) have no title to the said tract of land, the title thereto being vested in the heirs of A. J. Kibler, their ancestor, who purchased the same at the sale, under the judgment of foreclosure, as shown by the testimony.   Upon this question the referee concludes that, even if the mortgage under which the land was sold had been trust funds in the hands of the administrator (which does not appear), any title or interest which the distributees might have in the same, would cease as soon as the liability thereon is paid off and discharged, and then is only chargeable, equally with all other property of the said Kibler, with the payment of the several amounts due by him to the plaintiffs or their legal representatives, etc.   The Circuit Judge, stating that he was satisfied that the adminis-

trator acted in good faith in bidding off the cotton at the sale, said: "The fact that he charged himself with the increased price for which he sold the cotton, is the highest and best evidence of good faith." He also found that the administrator charged himself with the cotton at the highest market price; but he declined to make an order for an amendment of the complaint so as to make the heirs at law of Kibler parties, so as to try the title to the land, but preferred to leave the matter of the title open. We think, however, from his other rulings, that he substantially agreed with the referee.

The cotton belonged to the estate, and, of course, the distributees are entitled to its actual value. But they are not entitled both to the value of the cotton and the securities taken for it, or any part of it, at the second sale made by the first purchaser. The administrator does not seem to have had a very clear idea of his rights or liabilities in the matter. He bid off the cotton, and very properly charged himself with its actual value on the sale bill; and yet it seems that he took the note payable to himself as administrator, and sometimes spoke of having purchased it for the estate. That was not consistent with his conduct and the facts of the case. We agree that the extent of the right of the distributees is to realize the actual value of the cotton as charged on the sale bill. If that can be made good in the accounting, then the distributees have no further interest in the matter of the McIlwaine land. The legal title is in the heirs of Kibler, and there is no equity on the part of the distributees to have declared a resulting trust, or to have the rents and profits thereof. In this view, it was error to allow the administrator credit for costs or fees or any other expenses incurred in recovering or cultivating the McIlwaine land.

Section 1974 of the General Statutes provides as follows: "It shall be lawful for any executor or executrix, administrator or administratrix, to become a purchaser at the sale of the estate of his or her testator or intestate, under whatever authority the said sales may be made, and the property so purchased shall be vested in him or her; but he or she shall be liable to the parties interested for the actual value of the property at

the time of sale, in case it shall have been sold at an under-
price," &c.    See *Finch* v. *Finch*, 28 S. C., 168, and authorities
cited.

(3) As to the deposit in the Bank of Mecklenburg, N. C.,
the defendant alleges that the referee erred in not allowing
the administrator credit for money deposited in the Bank of
Mecklenburg, North Carolina.    To sustain this credit,
three certificates were produced, issued by the Bank of
Mecklenburg at Charlotte, N. C., payable to A. J. Kib-
ler individually, for $1,189.50 in gold, $40.44 in silver, and
$371.77 in currency, and bearing interest at eight per cent.    The
bank failed on August 4, 1875, and on November 1, 1878, A.
J. Kibler individually receipted on each of the certificates for
a dividend paid by the bank.    He does not refer to the "de-
posit" in his returns, and does not charge himself with the
dividend received.    There were endorsements, without date,
on the certificates, in the handwriting of Kibler, that they
belonged to the estate of Cunningham, and his testimony to
the same effect, when called upon to account, is inconsistent
with his acts.    The Circuit Judge held: "Assuming that the
bank was in good financial standing, and that there was no
impropriety in the administrator depositing money in a bank
at Charlotte, N. C., upon the evidence I fail to see how the
referee could allow the credit."    The referee found that, as
matter of fact, the money deposited was the individual prop-
erty of the administrator, and not of the estate.    In this find-
ing the Circuit Judge concurred, and, under the well estab-
lished rule, it will not be disturbed unless it is against the
weight of the testimony, which we can not say that it is.    We
concur with the Circuit Judge in sustaining the referee on this
point.    See *Williams* v. *Williams*, 55 Wisc., 300; s. c. 42 Am.
Rep., 708.

The defendant's exceptions down to No. 15, and including.
29 and 31, have now been considered in connection with the
special points disposed of above.    Nos. 15, 16, 17, 18,
and 19 are too general, making reference to former ex-
ceptions to the referee's report difficult to find in such
an enormous record.    Besides, they make no particular points,

but are rather argumentative as to what should be the proper principles applied to the accounting. As, for example, No. 15 complains that "The judge erred in not holding that the verified annual returns of Kibler, as administrator, to the Probate Court, made ten, fifteen, and twenty years ago, when the facts were fresh in his mind, and entered of record, open to the inspection of all parties interested and to the world, were *prima facie* evidence of the credits claimed. The ,fact that Kibler died pending the reference, &c., gives additional force to the rule invoked, and the same should prevail in the absence of affirmative evidence, that the credits claimed were improper expenditures, or otherwise successfully impeached," &c. There is nothing here to decide, except to hold, as the judge did, "that Kibler's returns to the Probate Court were *prima facie* evidence of the credits claimed, if it appeared on the face of the returns for what purposes of the estate the payments were made." As to the exceptions indicated, it is really impossible to determine what are the precise points which are sought to be reviewed; and the enforcement of rule No. 5 of this court is invoked.

Exception 20 of defendant complains that there is error in the manner of stating the account, "in this, that not one of the payments made to, or for, distributees, on account of their distributive shares, has been credited against 'the annual balances' found in Kibler's hands in any year of the accounting, and that Kibler is held responsible for a principal or interest bearing fund in excess of what is just." We are not sure that we clearly comprehend the point made. As we understand it, in stating the account of the general estate, this is not a case, so far as the distributees are concerned, for the application of the rule in regard to "annual balances." The amounts paid to the distributees from time to time were not, as we think, "expenditures," in the sense of *Dixon* v. *Hunter*, 3 Hill, 206. They did not, in reality, diminish the volume of the estate in the hands of the administrator, the whole value of which it was necessary to ascertain, to make a fair division among those equally interested. The payments were rather in the nature of advances or loans, still parts of

the whole estate, and to be accounted for as such; the children advanced, however, being required, on final settlement, to account for interest on their respective advances, from the times they were received, and thus re-imburse the administrator for so much interest as had been charged to him on the advances. This exception, as stated, must, therefore, be overruled.

Exception 21 of defendant. Because the Circuit Judge erred in ignoring, or failing to pass upon, defendant's 30th exception to the referee's report, by which defendant claimed credit for two and one-half per cent. commissions on $11,613.83, for interest charged in "exhibit A," received between January 1, 1883, and August 1, 1890. As it seems that the judge made no ruling upon the subject of this exception, and the case must go back to the Circuit, it will be recommitted.

Exception 22. Because the referee refused to allow Kibler credit for paying out for W. J. Cunningham $2.50, tavern bill paid to B. P. Boyd, and for sundry other payments for the year 1871, aggregating $151.98, and for $8.10, paid by Kibler for him in 1872 and 1873," &c. These items of account, stated in the referee's report, were all disallowed by the referee; the defendant excepted, the exception overruled, and the defendant appeals. In such a multitude of items of account, something must be allowed to the concurrence of the referee and Circuit Judge. Exception overruled.

Exception 23 of defendant. Because the referee refused to allow Kibler credit for paying a number of items, including board in 1869 and 1870, for Thornwell K. Cunningham. Similar to the above. Disallowed by the referee; defendant excepted, exception overruled, and defendant appeals. Exception overruled.

Exception 24. Same as above, but in reference to the account against Nancy C. Vanlandingham. In this case the Circuit Judge allowed a credit of $25 for board. This is not disturbed, but defendant's exception overruled.

Exception 25. The same as to the account against Beauregard Cunningham. But in this matter, also, the judge allowed a credit of $40 for board. There is a good deal of confusion in the testimony upon the subject of board, but we con-

firm the ruling of the Circuit Judge. Defendant's exception overruled.

Exception 27 of defendant. "That the Circuit Judge erred in overruling the defendant's thirteenth (13) exception to the referee's report, which claimed credit for the two following notes, charged as part of the sale bill, which Kibler failed to collect, viz.: (1) Note given by J. W. Crider and J. M. Ingraham, for $114.24, (2) and note of J. M. Ingraham, for $83.25, March 24, 1866. And the following notes given for money loaned, belonging to the Kibler (Cunningham) estate, viz., note of W. G. Stewart and Margaret Stewart. These notes were lost, and the Circuit decree did not allow the defendant credit for them. The referee disallowed credit for the notes as follows: (1) For the Crider note, for the reason that it was not given to the estate, but to Kibler for cotton, which he claimed to have bid off for himself; also, for the reason that the surety taken was insufficient, and the note had been paid in part. (2) He also disallowed credit for the Ingraham note, for the reason that there was no surety to the note, nor security for its payment, and also for the reason that it was not shown to be for the estate, or that the same, with proper diligence, could not have been collected. (3) He disallowed the Stewart note, for the reason that there was but one surety, that it was not shown to belong to the estate, or that the same could not have been collected at any time, down to 1875. The Circuit Judge concurred with the referee in these findings and rulings, and we cannot say that in doing so he committed error. Exception overruled.

Plaintiffs' exceptions, from 1 to 9 inclusive, have been considered in connection with the subject of the McIlwaine land.

Exception 10 of plaintiffs, complains of error in the allowance of credits to the administrator, consisting of twenty separate and distinct claims of credit allowed, which seem to have been strongly contested and carefully considered below, where the witnesses were present, and the able counsel engaged had ample time. After this contest the referee allowed the credit in each claim. The plaintiffs excepted, exceptions overruled, and the plaintiffs appeal. This court really

has not the time to reconsider every item in an action for account. The concurrence of the Circuit Judge with the referee as to the sufficiency or insufficiency of the proofs, must, as a rule, be taken as conclusive. We have looked through the specifications of error alleged under this general exception, and we can not say that there is error. Exception overruled.

Exception 11 of plaintiffs complains of error in the Circuit decree, in allowing Kibler, the administrator, credit for certain alleged losses of money, claimed to belong to the estate of the intestate, whereas the evidence failed to establish that said losses were incurred without fault on the part of the said administrator: (1) Loss of note by J. B. Mobley *et al.*, for $25, and premium, $10.29, it not having been shown that the same could not have been collected when due. (2) Loss of note by D. P. and G. W. Bell, for $7.60, and premium, $3, it not having been shown that same could not have been collected when due. (3) Loss of balance due on note of B. F. Mobley *et al.*, said balance being $2.86, and the premium thereon, $5.14, it not being shown that same could not have been collected when due. As to the specifications of alleged error, we have looked through the evidence, and we can not say that there was error. Just after the war was a hard time for all trustees. The referee allowed the credits, the plaintiffs excepted, exception overruled, and plaintiffs appeal. Exception overruled.

Exception 12 charges error in finding that the said Kibler, as administrator, paid out to and for one of the plaintiffs, William J. Cunningham, on account of his distributive share in the estate, certain sums herein below stated, whereas there was no sufficient evidence to establish the same as proper payment on account of said share, and the Circuit Court should have sustained the exceptions by plaintiffs. As to the specifications under this general head, the same remark is made as above under exception 10. Exception overruled.

Exception 13 of plaintiffs complains of error in finding that the administrator Kibler paid out to and for another of the plaintiffs, viz., Thornwell K. Cunningham, on account

of his distributive share in the estate, certain sums herein below stated; whereas there was no sufficient evidence to establish the same as proper payment on account of the said share, &c. As to the specifications under this general head, the referee allowed them; the plaintiffs excepted, the exceptions were overruled, and the plaintiffs appeal. Exception overruled.

Exception 14 of plaintiffs complains of error in finding that the said Kibler, as administrator, paid out of the moneys of said estate certain sums below stated, whereas there was no sufficient evidence to establish the same as proper payments on account of the said estate, and the Circuit Court erred in overruling the report of the referee, disallowing the same, viz.: (1) Clerk Clyburn's costs in Croxton *v.* Kibler, $3; (2) J. D. White's attorney's costs, Croxton *v.* Kibler, $30; (3) Clerk Clyburn's costs, Croxton *v.* Kibler, $9. These three items are for tax costs in the same case, and may be considered together. In 1866, soon after the war, it seems that educational facilities in Lancaster County were not good, and that Kibler, wishing to send four of the Cunningham children to school, procured the services of one Croxton as a school teacher for ten months, for $300, the tuition fees of some neighbors, who sent some thirteen children, to assist in paying the amount agreed upon, $300. There was controversy about it, and Croxton sued the administrator Kibler for the whole amount, and recovered judgment against him, and he had the costs, now in contention, to pay. Kibler had no children of his own, and he claimed that the arrangement with Croxton was made exclusively for the benefit of the Cunningham children. It is true, the contract was that of Kibler, and not of the children, but it was clearly for their benefit, and we think that, in justice and equity, the administrator should have the credit. The referee disallowed it, the defendant excepted, the Circuit Judge sustained the exception, and the plaintiffs appeal. We concur with the Circuit Judge, and the exception is sustained. In the matter of the costs. As the case will have to go back to the Circuit to reform the account in some respects, we think it better that the order as to costs should await that account-

ing. The order as to costs is reversed without prejudice.

The judgment of this court is, that the decree of the Circuit Court be affirmed in all matters, except as herein reversed or modified, and that the case be remanded to the Circuit Court for such further orders and proceedings as may be necessary to carry into effect the conclusions herein announced.